**GENERAL AMERICAN LIFE INS. CO.
v. ANDERSON.**

**ANDERSON v. GENERAL AMERICAN
LIFE INS. CO.**

**Nos. 9994, 9995.**

Circuit Court of Appeals, Sixth Circuit.

June 24, 1946.

Wm. Marshall Bullitt, of Louisville, Ky., (Bullitt & Middleton, of Louisville, Ky., of counsel; R. Lee Blackwell, and Eugene B. Cochran, both of Louisville, Ky., on the brief), for General American Life Ins. Co..

Robert S. Marx, of Cincinnati, Ohio, (Nichols, Wood, Marx & Ginter, of Cincinnati, Ohio, of counsel; Frank E. Wood, and Harry Kasfir, both of Cincinnati, Ohio, on the brief), for A. M. Anderson.

Before SIMONS, ALLEN, and Mc-ALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

After fifteen years of litigation, embracing three trials in the District Court, this case now comes to us on its third appeal in this court. Missouri State Life Insurance Co. v. Keyes, D.C.W.D.Ky., 46 F.Supp. 181; Anderson v. Missouri State Life Ins. Co., 6 Cir., 69 F.2d 794; General American Life Insurance Co. v. Anderson, D.C.W.D.Ky., 46 F.Supp. 189; Anderson v. General American Life Insurance Co., 6 Cir., 141 F.2d 898; and the judgment from which appeal is here taken, rendered February 16, 1945, in General American Life Insurance Co. v. Anderson.

The controversy has had a lengthy and involved history both in the District Court for the Western District of Kentucky and in this court. At its commencement, the case turned upon the question whether plaintiff trustee's predecessor, Missouri State Life Insurance Company, was entitled to a creditor's claim in the amount of $500,-000 against the insolvent National Bank of Kentucky, by virtue of two notes which it held in the amount of $250,000 each. The receiver of the bank disputed the claim of the insurance company, and proceeded, before adjudication of its claim, to pay 77%

in dividends to other creditors on claims both prior and subsequent in point of time to the claim of the insurance company.

On the first trial of the case, the District Court decided in favor of the insurance company's claim, on the basis of the opening statement of counsel. On appeal, that judgment was reversed on the ground that the court should have allowed evidence to be introduced upon various issues raised by the defendant. Before the case could be retried, the judge before whom the first hearing was held, died, and there ensued a long delay in the proceedings. Finally, however, the case was again tried before a judge subsequently appointed, who entered judgment in favor of the insurance company but denied interest on the delayed dividends. That court, however, found that the company was nevertheless entitled to the dividends. This judgment was thereafter sustained on appeal, except for the determination on the question of interest, and on that phase of the case, it was remanded to the District Court with instructions to enter judgment for the General American Life Insurance Company for 6% interest on the delayed dividends, from the date when like dividends were paid to the other creditors of the bank up to the date when the dividends should be paid to the insurance company. However, the District Court, in the opinion on appeal, was further instructed to abate "interest for such [periods] as may be found to have been consumed as a result of inexcusable delay of attorneys for the insurance company in prosecuting its claim and in filing required briefs; and also interest shall be abated for a period of six months from the date our mandate herein is received and filed in the district court, which is deemed a reasonable time for determination of the issue for which the cause is remanded." Anderson v. General American Life Insurance Co., 6 Cir., 141 F.2d 898, 911.

Pursuant to these instructions, the District Court held hearings and heard arguments on the question of abatement of interest, and on February 16, 1945, entered a judgment abating interest on the delayed dividends for the periods: from March 2, 1939, to December 14, 1940, in the amount of $41,619.58; from December 14, 1940, to February 3, 1941, in the amount of $3,250.-53; from September 11, 1942, to December 16, 1942, in the amount of $6,182.39; and from July 20, 1944, to January 20, 1945, in the amount of $11,663.69—or a total abatement of interest in the amount of $62,716.19.

Plaintiff's chief contention is that the insurance company's right to interest on the two delayed dividends was an absolute right; that such interest was recoverable as of right for the reason that it was both statutory and contractual in nature; that there is no discretion lodged in the court to deny or abate any part of the interest; and that this court was in error in its judgment on the second appeal in supposing that there was any power in the court to abate interest for delay in the prosecution of the suit. Plaintiff declares that this court, therefore, should disengage itself from everything that it has heretofore said on the subject of abatement of interest for delay on the part of the insurance company in prosecuting its claim to judgment, and direct the entry of a judgment for full interest on the delayed dividends from the date when like dividends were paid to the other creditors of the bank.

Plaintiff did not appeal from the prior decision of this court or file petition for rehearing. In seeking to reverse the judgment of the District Court, plaintiff asks us to reverse likewise the prior decision of this court contrary to the doctrine that the decision of an appellate court in a given case is the law of that case and that no question therein decided will be considered in a subsequent appeal in that case. This rule of "the law of the case," is a salutary rule, necessary as a matter of policy in order to end litigation. It is based upon the ground that "there would be no end to a suit if every obstinate litigant could, by repeated appeals compel a court to listen to criticisms on their opinions, or speculate of chances from changes in its members." Roberts v. Cooper, 20 How. 467, 481, 15 L.Ed. 969; and it would be impossible for an appellate court to perform its duties satisfactorily and efficiently if a question once considered and decided by it were to be litigated anew in the same case upon any and every subsequent appeal. Great Western Telegraph Co. v. Burnham, 162 U.S.

339, 344. But, as was said by this court in Chesapeake & Ohio Ry. Co. v. McKell, 6 Cir., 209 F. 514, 516, "we find no occasion to doubt the abstract power of an appellate court, upon a second review, to reach a result inconsistent with its decision on the first review of the same case (Messinger v. Anderson, 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152); but this is a power to be exercised very sparingly, and only under extraordinary conditions. The practice that such a decision be treated as the law of the case, to be followed by the appellate court itself as well as by the trial court, is most salutary, and its violation (save in rare exceptions) would intolerably unsettle all litigation." The power of an appellate court to review questions involved in a former decision and reach a different result may not be rightly exercised except in a very clear case. Williams v. Order of Commercial Travelers of America, 6 Cir., 41 F.2d 745.

■ In this case, there was a definite determination on the last appeal, that, upon remand to the District Court, interest should be abated upon the delayed dividends for such period of time as might be found to have been consumed as a result of inexcusable delay on the part of counsel for the insurance company in prosecuting its claim. The District Court proceeded to abate interest in conformity to the directions of this court, and, certainly, except in case of extraordinary circumstances such as clear mistake or gross and manifest injustice, its action in compliance with our instructions, should not be questioned on a second appeal. People of State of Illinois ex rel. Hunt v. Illinois; Central Railroad Co., 184 U.S. 77, 22 S.Ct. 300, 46 L.Ed. 440; United States v. Camou, 184 U.S. 572, 22 S.Ct. 505, 46 L.Ed. 694. Yet, because of the fact that the insurance company bases its chief claim on appeal upon the asserted error of law of this court in directing abatement of interest upon findings of the company's inexcusable delay in prosecuting its claim, we turn briefly to consider our prior determination. "This court," says the insurance company, "has absolutely no discretion whatever to allow, to withhold, or to abate (interest). Upon that rock, General American builds its house."

The basis for the foregoing contention, as has been observed, is that the interest became part of the debt, and that the obligation of the receiver to pay interest on delayed dividends was (1) statutory—being implied by the very nature of his promise to make a ratable distribution to creditors (12 U.S.C.A. § 194)[1]; and, (2) contractual. ■ From an examination of the language of the statute, we are unable to agree with the reasoning that deduces that the receiver was therein directed or obliged to pay interest on the delayed dividends.

■ With regard to the contention that the obligation to pay interest on the delayed dividends was contractual in nature, and that, therefore, the interest became part of the debt and could not be separated from it and abated, we have again reviewed the authorities cited by counsel for the insurance company. On this point, the receiver insists that interest on the delayed dividends is not contractual in nature, but, rather, is allowable, on the theory of damages for the withholding of the funds from the insurance company, and may, therefore, be abated in whole or in part for the fault or self-imposed delay of the claimant in prosecuting its suit. There seems to be no question that if the interest in this case on the delayed dividends is allowable as damages for withholding funds, the court may abate such interest or portions thereof for inexcusable delay in the prosecution of

[1] Title 12 U.S.C.A. § 194, provides as follows:

"Dividends on adjusted claims; distribution of assets

"From time to time, after full provision has been first made for refunding to the United States any deficiency in redeeming the notes of such association, the comptroller shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and, as the proceeds of the assets of such association are paid over to him, shall make further dividends on all claims previously proved or adjudicated; and the remainder of the proceeds, if any, shall be paid over to the shareholders of such association, or their legal representatives, in proportion to the stock by them respectively held. R.S. § 5236."

a claim. In Redfield v. Ystalyfera Iron Co., 110 U.S. 174, 176, 3 S.Ct. 570, 572, 28 L.Ed. 109, the court, speaking through Mr. Justice Matthews, said: "Interest is given on money demands as damages for delay in payment, being just compensation to the plaintiff for a default on the part of his debtor. Where it is reserved expressly in the contract, or is implied by the nature of the promise, it becomes part of the debt, and is recoverable as of right; but when it is given as damages, it is often matter of discretion. In cases like the present, of recoveries for excessive duties paid under protest, it was held in Erskine v. Van Arsdale, 15 Wall. 75 [21 L.Ed. 63], that the jury might add interest, the plaintiff ordinarily being entitled to it from the time of the illegal exaction. But where interest is recoverable, not as part of the contract, but by way of damages, if the plaintiff has been guilty of laches in unreasonably delaying the prosecution of his claim, it may be properly withheld." See also United States v. Sanborn, 135 U.S. 271, 10 S.Ct. 812, 34 L.Ed. 112; Redfield v. Bartels, 139 U.S. 694, 702, 11 S.Ct. 683, 35 L.Ed. 310.

At this point, it will serve to clarify many of the issues to recall the general nature of the proceedings before us: This is a suit in equity. It was commenced through the filing of a·bill by the insurance company to compel the receiver to pay to it the dividends accorded to other creditors. The receiver was the federal government receiver appointed in accordance with the statutes of the United States to conserve the assets of an insolvent national bank. It was unable at any time to secure or earn any interest on the funds in its hands which were held for the payment of creditors and depositors of the bank.

With these facts in mind, we come, then, to the question whether the interest on the delayed dividends is in its nature, contractual, or allowable as damages for the withholding of funds from the claimant.

In the liquidation of national banks, dividends from the general funds on unsecured claims are made pro rata upon the amount of each claim as of the date of the insolvency. White v. Knox, 111 U.S. 784, 4 S.Ct. 686, 28 L.Ed. 603. This method of distribution gives a proportional part of the available funds to each creditor, in accordance with the statute requiring a ratable dividend. Title 12 U.S.C.A. § 194. It is in order to assure equality among creditors as of the date of insolvency that interest thereafter is not considered. "But interest is proper where the ideal of equality is served, and so a creditor whose claim has been erroneously disallowed is entitled on its allowance to interest on his dividends from the time a ratable amount was paid other creditors. Armstrong v. American Exchange National Bank, 133 U.S. 433, 470, 10 S.Ct. 450, 33 L.Ed. 747." Ticonic National Bank v. Sprague, 303 U.S. 406, 411, 58 S.Ct. 612, 614, 82 L.Ed. 926. It was in keeping with this rule that we held in our prior opinion that the insurance company in this case was entitled to interest upon the delayed dividends from the dates when like dividends were paid to other creditors. Anderson v. General American Life Ins. Co., 6 Cir., 141 F.2d 898, 911. But this was not a determination that such interest was payable because it was contractual in its nature. The insurance company was not suing on a contract to pay interest as evidenced by the certificates of deposit which it held. It was asking the court to compel the receiver to pay dividends on its claim; and its claim to the dividends was based upon the statute above mentioned, providing for the payment of ratable dividends.

While we decided that the insurance company was entitled to interest upon the delayed dividends from the date when like dividends were paid to other creditors, we held that such interest was not allowable for any period of time that might be found to have been self-imposed by the insurance company or its representatives. This was on the theory that such interest was allowable as damages suffered by the claimant from the delay in payment of the dividend, but was not to be awarded for any delay caused by the claimant or those acting on its behalf.

Whether the allowance of interest on delayed dividends is for damages suffered for delay, or is based on a contractual obliga-

tion, can best be determined from a review of some of the prior adjudications of the Supreme Court and of this court. In Armstrong v. American Exchange Bank, supra, interest on a dividend, which should have been paid at a time when other creditors were paid, was allowed from the date of payment of such other dividends, "to put the plaintiff on an equality with the other creditors." 133 U.S. 433, 470, 10 S.Ct. 450, 462, 33 L.Ed. 747.

In Chemical National Bank of New York v. Armstrong, 6 Cir., 59 F. 372, 384, Judge Taft, later Chief Justice Taft, speaking for this court, in discussing the allowance of interest on dividends to a creditor, which had been paid to others, said: "Now, a part of the reasonable expense of refusing to pay what is believed to be an unjust claim, but which is held thereafter to be a just one, is the damage from the delay to the person to whom the payment should have been made—*a damage which is measured by interest on the amount due and unpaid during such delay.* It is equitable and just, therefore, that the share of the other creditors in the assets of the bank should be reduced by enough to pay the interest on the delayed dividends * * * 1rom the date of the rejection of the claim until such dividends are paid. This conclusion is fully sustained by the decision of the supreme court in the case of Armstrong v. [American Exchange] Bank, 133 U.S. 433, 10 S.Ct. 450 [33 L.Ed. 747]" (emphasis supplied); and the court quoted from the cited case: "The allowance of that interest is necessary to put the plaintiff on an equality with the other creditors." (133 U.S. at page 470, 10 S.Ct. at page 462, 33 L.Ed. 747.)

In Ticonic National Bank v. Sprague, 303 U.S. 406, 414, 58 S.Ct. 612, 82 L.Ed. 926, the Supreme Court referred to and approved Chemical National Bank v. Armstrong, supra, with respect to the holding therein that interest on dividends delayed in payment while other dividends were distributed, was allowed as damages for the delay. It is true that the rule was somewhat conversely stated in approving the charge for such interest against the other creditors, for it was said that, since. if a receiver is successful in his conduct of litigation against certain creditors, the benefit will inure to the general creditors, therefore, such general creditors may fairly be charged with the expense of contesting the claim, *"including interest by way of damages."* (Italics supplied.)

It was emphasized in the Chemical National Bank case, supra, that the money in the hands of the receiver applicable to the payment of dividends during the time the delay was self-imposed by the claimant lay in the Treasury of the United States *drawing no interest,* which is similar to the circumstances in the instant case. In Seaboard Surety Co. v. Spear, 6 Cir., 119 F.2d 849, this court held that in a suit in equity, the allowance of interest is within the discretion of the court and will not be disturbed except for clear abuses. The insurance company objects that loose language was used in this opinion and insists that the discretion in the allowance of interest depends not upon whether the suit is at law or in equity, but upon the character of the claim itself. It is conceded, however, that the court was correct in its decision in the cited case for the reason that the suit was for damages, and that the allowance of interest in such a case is within the discretion of the court. Apparently, counsel would agree that if interest were to be based on equitable principles, or as damages, its allowance would be discretionary.

All of the foregoing, however, serves to confirm our conclusion in the prior appeal. Interest is allowable in this case as damages for the detention of funds. The allowance is of an equitable nature—to place the claimant on an equality with other creditors. The case itself is in equity and calls for the application of equitable principles. The receiver secured no interest from funds in its hands during the delay in payment of the dividend to the insurance company. We, therefore, reaffirm our prior determination that interest upon the delayed dividends should be abated for such period as may be found to have been consumed as a result of self-imposed delay on the part of the insurance company or its representatives in prosecuting its claim and in filing required briefs.

Upon the remand provided for in our prior opinion, the District Court held hearings and declined to allow interest on the delayed dividends during certain periods above mentioned. The abatement of interest followed from findings of the trial court that the delay resulting from the time taken by counsel to file certain briefs and proposed findings requested by the court was, during the periods in question, self-imposed on the part of counsel for the insurance company.

Before discussing the trial court's findings as to self-imposed delay, it seems advisable to comment upon certain observations of counsel with regard to the court's disposition of the question of abatement of interest. It is said that all during the pendency of these protracted proceedings, the bank and its successor, the receiver, held the $500,000 which it had improperly secured from the insurance company, and which it always justly and legally owed; and that the court had no right to take from the insurance company, in arbitrary and highhanded fashion, a total of $62,716.19 (as interest) and *give* it to the receiver. This is a most persuasive manner of presenting the argument. But it depends for its force upon the premise that the insurance company was entitled to the interest, as of right. This contention, we have overruled. The interest was not taken away from the insurance company and given to the receiver. The insurance company had never become entitled to the interest in question. Such interest on the delayed dividends was allowable only as damages for the delay on the part of the receiver in withholding payment from the insurance company. For this delay, which the court found was caused by the receiver in withholding payments on the claim, *during various periods, aggregating upwards of twelve years*, the court allowed the insurance company a recovery of the sum of $237,975.97 as interest. But interest was not allowable, and did not run against the receiver, during any period in which the delay was self-imposed by the insurance company; and the court found that the receiver was not chargeable for such a delay, *during various periods aggregating approximately twenty months*, and did not allow interest for that period.

This brings us to the consideration of the trial court's findings of fact, which we proceed to summarize, together with the contentions of the insurance company arising thereupon: Both parties, the court found, at the conclusion of the trial, requested that they be given an opportunity to brief the case. The insurance company takes exception to this finding, and introduced testimony to support its claim that it did not request permission to file a brief, but rather sought to submit the case on oral argument. The court in rendering its oral decision stated that it recollected that both parties requested permission to file briefs. In any event, it is indisputable that the case was finally submitted on September 30, 1938, and that, as disclosed by the stenographic transcript of the proceedings, the trial court gave both parties leave to file briefs. That, in the usual course of trial procedure, is understood as directing the submission of such briefs. Moreover, an order was subsequently filed by the court on the same day—the day on which the trial was concluded—setting December 10, 1938 as the date on which the receiver's brief was to be filed, and February 1, 1939 as the date for filing the insurance company's brief. The claim that this order was merely "permissive," and meant that the parties could file briefs or not as they chose, does not seem a meritorious contention, especially in view of the subsequent proceedings. For after the entry of the order, counsel for the insurance company wrote the receiver's lawyers requesting "that the time for filing the brief be changed as follows: Defendant—January 1, 1939. Plaintiff—February 15, 1939 * * * May I hear from you as to the court's ruling on the matter." The court granted the extension for the filing of their brief, as sought by the insurance company's counsel, to February 15. Although the receiver's brief was filed on time, the insurance company did not file its brief in February or for many months thereafter. Counsel for the receiver repeatedly expostulated, and even filed a motion to dismiss the suit ten months later, for failure to prosecute. The

trial judge wrote both parties on several occasions as to the status of the case. Counsel for the insurance company repeated from time to time that they would get the brief in, but, as often, failed in their promises. On October 26, 1940, the trial judge wrote counsel for both parties, stating that he had had a conversation with the lawyers for the insurance company and had been advised of illness in their families and that the filing of the brief had thereby been delayed; but the judge stated that unless he heard something further from the attorneys for the insurance company, he would direct the Clerk to forward the record to him on November 15, inasmuch as the case should be disposed of without further delay. A few days thereafter, counsel for the insurance company wrote the judge stating that most of the brief had been set up for printing, but that it could not be filed by November 15. Further time was requested. The judge replied that counsel would be given until December 15. It was not until that date that the brief in question was filed. This was one year and ten months after the date set by the court in its order for the filing of the insurance company's brief.

■ It is contended that, after the trial court had advised counsel for the insurance company, in effect, that he would proceed to decide the case without awaiting their brief, his letter to them stating, in reply to their subsequent request, that they would be given until December 15, 1940 to file their brief, was in the nature of an order nunc pro tunc to cover the delay of twenty-one months in the filing of the brief as of that time. We cannot agree with this contention. The court's letter to counsel is to be construed as advice that he would await the filing of their brief until the time stated before proceeding with its determination of the case; and that is the way in which the trial court itself construed it.

■ Upon a review and consideration of the contentions of counsel for the insurance company, the reasons given by them for the delay, and a scrutiny of the record in this regard, we are of the opinion that the trial court was justified and should be sustained in refusing to allow interest against the receiver during the period between the dates specified by the court in its order for the filing of the brief in question, and its actual filing.

■ Interest was further disallowed by the trial court for the period from December 15, 1940, the date on which counsel filed the brief for the insurance company—which has been the subject of the foregoing discussion—up to and including February 4, 1941. In that brief, counsel for the insurance company stated that "in order not to interfere with the continuity of our brief, we will, in a separate pamphlet, reprint in full the receiver's brief, which also contains the CCA's opinion; and then, in parallel columns, comment fully upon it." This, in effect, certainly appears to be a declaration by the insurance company that it did not consider that its answer to the receiver's brief was to be completed until it had filed the so-called "parallel column brief." In other words, the insurance company was stating to the court, and giving notice, that its brief answering the receiver would actually consist of two briefs—one of which was 229 pages in length, already filed, and the other, an elaborate brief with full commentary on every part of the receiver's brief, and which was still to be filed at some future time. Counsel for the receiver objected to such an additional brief, and accordingly asked the court for an order restricting the filing of additional briefs. In answer, counsel for the insurance company wrote opposing counsel and the court, stating that they would not file any "parallel column comment," until after the receiver's reply brief had been filed. It seems, however, that the receiver was objecting to any comment on its original brief which counsel for the insurance company might advance after the receiver's reply brief had been filed, as they stated in a letter to the court, with copy to counsel for the insurance company:

"Our purpose for being definite is due to the fact that in letter of January 22 written by opposing counsel they state that they still may file a 'parallel column comment' with respect to our original brief after our reply is filed. We do not believe that the filing of such document, which is strictly

in response to our original brief, is proper unless it is filed before we prepare our reply. * * *

"We have no objection to proper response by the plaintiff to our reply and have provided in the entry that they may file additional authorities within ten days after our reply is filed. This is in accordance with your suggestion. We do not believe, however, that such right should be extended to enable the plaintiff to file what they call a 'parallel column comment' on our original brief. If they desire to file such memorandum, it should be done now before we prepare our reply so that we can include our comments on this memorandum in the brief we are now preparing."

The court thereupon, on February 4, 1941, entered an order which was jointly prepared and agreed to by counsel for all parties, that the insurance company file any and all briefs in answer to the receiver's original brief, on or before February 10, 1941, and which further ordered that no further brief or comment of the insurance company should be filed thereafter in answer to the receiver's original brief. Such a parallel column brief was thereafter on February 10, 1941, filed by the insurance company, and was limited to the further answer and comment upon the receiver's original brief. On a review of the disputed matters and a reference to the record with respect to the transaction in question, we are in accord with the finding of the trial court that this additional delay was caused by the insurance company and that such a delay in completing its response to the original brief of the receiver was unauthorized until the court had made the order of February 4. The conclusion that this delay was of such a self-imposed nature that the receiver should not be held for interest during that period is accordingly sustained.

Interest was further abated from September 11, 1942, to December 16, 1942, for delay on the part of the insurance company in submitting proposed findings of fact and conclusions of law. On July 10, 1942, the trial court filed its opinion on the second trial of the case in favor of the insurance company (General American Life Insurance Company v. Anderson, D.C., 46 F. Supp. 189, 198), and concluded: "Proper findings of fact, conclusions of law and judgments in accordance with this opinion will be submitted." It appears that the trial judge afterwards stated, in a colloquy with counsel for the insurance company, before entry of the judgment here appealed from: "A personal request was made by both parties that they be permitted to file findings of fact and conclusions of law." Proposed findings and conclusions were tendered by the receiver, the losing party, some weeks after the filing of the above mentioned opinion. The trial court held that sixty days was a reasonable time within which the insurance company should submit its proposed findings, and for all delay after such period until they were submitted, the trial court refused to allow interest on its claim.

It is contended that counsel for the insurance company could not be expected to understand the court's opinion as a direction to submit proposed findings, inasmuch as it is the duty of the court to make its own findings. It is a general practice, however, that has grown up over a period of many years in various state and federal courts for the trial court to call upon counsel to submit such proposed findings and conclusions, and many counsel consider them an opportunity to submit their arguments anew in the way of a formal proposed decision in their favor. This apparently was the way in which the receiver's counsel considered the court's order, and copies of the receiver's proposed findings were also sent to the insurance company's attorneys. When the trial judge replied to the letter from receiver's counsel, with copy to the insurance company lawyers, he mentioned that he had as yet heard nothing from the attorneys for the insurance company. Shortly thereafter, however, the latter wrote on August 15, 1942, in answer to the judge's letter, stating that he would proceed to submit such conclusions and findings. On October 16, the trial judge wrote stating that he had not received them, and was anxious to have the matter completed. On October 23, counsel for the insurance company replied that he would get right at the proposed findings and indicated that the delay was due to study and conferences on the questions in-

volved. On December 8, the judge had not yet received them, and wrote again that "the proposed findings of fact, conclusions of law, and judgment which you had requested to be permitted to submit in accordance with the direction of the opinion were long overdue," and that any such proposed findings which they desired to submit would have to be filed by December 20. On December 11, the proposed findings were actually filed. On a consideration of the foregoing, we must conclude that the trial court was justified in its belief that counsel understood that the language of the opinion did not mean that the court was to "submit" such conclusions and findings, but that counsel were to submit them to the court, and that the subsequent correspondence with counsel for the insurance company, supported such an understanding. We concur with the trial court in the determination that the receiver should not be charged for interest for a delay beyond the reasonable time granted to the insurance company by the court for the submission of the proposed findings.

 The insurance company claims that the judgment deprived it of $30,816.75 in interest to which it was entitled above and beyond that abated, and its contention is based upon the argument that the judgment including interest should bear interest from July 10, 1942, the date when it claims such judgment should have been entered. In the prior opinion of this court reversing the District Court in its former adjudication, it was provided that "the judgment of the district court is reversed as to paragraph six [allowance of the claim without interest]; with directions that judgment be entered in favor of the General American Life Insurance Company for 6% interest from the date when like dividends were paid to other creditors up to the date when its dividends shall be paid." The mandate contained this language, and the District Court in the judgment appealed from, followed the direction contained in our mandate. The purpose of the allowance of interest is to place the insurance company on an equality with the other creditors of the bank. The interest to which it is so entitled is simple interest, rather than the compound interest for which it here contends.

Much is made of the claim that the receiver, in tendering the sum of $625,703.04, as representing the delayed dividends due and the interest allowed thereon, to counsel for the insurance company, did not comply with the legal provisions of proper notice and with the technical requirements of the law of tender; and that, consequently, the trial court erred in entering an order stopping the accrual of interest as of February 19, 1945. It is here to be repeated that the opinion of this court on the last appeal directed that interest should be allowed on the unpaid dividends "from the dates when like dividends were paid to other creditors, up to the date when its dividends shall be paid to the General American Life Insurance Company." The trial court's judgment was entered on February 16, 1945. Two days before, on February 14, there was a hearing before the court, at which counsel for the insurance company was advised that the receiver would tender the insurance company and its counsel the amount of the judgment when it was entered, and that if such payment were not accepted, the money in the amount of the judgment would be paid to the court.

 On February 19, 1945, the receiver wrote counsel for the insurance company, stating that he was handing him two checks—one for $387,727.07, the full amount of the principal award, and the other for $237,975.97, which was the interest due up to that date, according to the court's order. The letter was taken to the office of the insurance company's counsel, and when it was discovered that Mr. Bullitt, the chief counsel, was home ill, the letter and checks were delivered to a member of his firm who was associate counsel. The receiver was informed that counsel preferred to have the tender made personally to Mr. Bullitt, and the receiver thereupon informed him that if a cash payment was required, the proper arrangements could be made forthwith for the payment of this immense sum in currency, and if such a tender was not accepted, it would be paid in to the court. Mr. Bullitt did not come to his office until February 21, 1945,

and on that day the checks and letters were again tendered to him. He, however, returned the checks with the statement, "No comment." and when the receiver inquired whether the tender of the checks was refused because it was not made in legal tender, he replied: "No comment." The receiver thereupon advised Mr. Bullitt that he and an associate would return to the office within fifteen minutes with legal currency, and would at that time make tender in the amount of $625,703.04, in cash. The receiver then went to the bank to secure this amount of currency, and while waiting for it to be delivered to him, received a telephone call from counsel for the insurance company, saying that to avoid hazards, they would come to the bank. A short time later, counsel for the insurance company arrived at the bank, where the receiver tendered $625,703.04 in currency to them. Mr. Bullitt counted the packages, and the four pennies and then advised the receiver that he had "no comments," and left without accepting the money. Two checks were then made payable to the Clerk of the United States District Court and presented to him February 21, 1945. Counsel for the insurance company were informed that the receiver's counsel would appear before the District Court in Covington, Kentucky, on February 26, 1945, with regard to the presentation of an appropriate order with reference to the money which had been paid into the registry of the court. There is a controversy as to whether the court actually discussed this matter with counsel for the insurance company. They did, however, receive the notice but did not appear in answer thereto on the ground that they did not have the five days' notice required by court rules. The hearing, however, was held, and the district judge entered an order reciting that inasmuch as it appeared to the court that the full amount due under the judgment had been tendered by the receiver in order to stop the running of interest, and refused by the insurance company, it was ordered that the amount so tendered was to be held by the Clerk for the account of the insurance company and that the receiver should be released from the payment of any further sums by way of interest from the date of such tender. In the foregoing, the District Court acted in accordance with equitable principles, and in compliance with our mandate. Interest, as has been said, is allowable in this case, on equitable principles. Upon being convinced that the insurance company refused to accept the amount tendered, the court properly acted to stop the accruing of any further interest. The amount tendered was the amount due under the court's order. Apparently the insurance company was claiming more interest, upon its contention that the judgment, including interest, should bear interest from July 10, 1942. But we have decided against that claim. If there had been any error in computation on the part of the receiver, the insurance company could have shown it. No such attempt has ever been made up to the present time, and nothing has been advanced to show that the entire amount due as principal and interest, according to the court's order, was not tendered to the insurance company, and deposited in court. The question of notice is of no importance, as long as the insurance company knew that the money had been deposited in court, and the trial court could have entered the order without any hearing or notice under such circumstances. If interest is allowable for delay in making payment, the insurance company could not claim interest after the money had been made available to it. In the exercise of our equitable powers in this case, we could here refuse to allow interest after the above mentioned tender, even if the trial court had not; and its conclusion in this regard is affirmed.

In abating interest for a period of six months after the mandate of this court was received and filed, the district court was merely following our instructions. It had seemed that the above period was a reasonable time for the determination of the issues of allowance and abatement of interest, for which the cause was remanded, and the determination in this regard was actually made by the court subsequent to the six month period. But interest was abated, on this aspect of the case, only for the period of six months provided in the mandate. We fail to find error in this determination.

We come to the claim of the receiver on cross appeal that we should reconsider our rulings on the merits of the case. We are of the opinion that there exist no grounds whatever for such action. Further, it is contended that the District Court erred in allowing interest on a delayed dividend from a date when other dividends were declared, although they were not paid until later. This was attempted to be proved by a motion to reopen the case to supplement testimony, after it had been submitted, and it was sought to show mistakes in the proceedings that had occurred nearly fourteen years before. The court found as a fact that the interest in question had been allowed on the delayed dividend from the date when the other dividends had been actually paid, and we feel that it properly declined to open the proceedings for the proof offered after the cause had been submitted. Moreover, the trial court refused to go back nearly fourteen years to consider, on a contention raised for the first time, on the final hearing, whether there should have been any abatement of interest for the period prior to the first decision by the district judge, whose death resulted in so much of the delay during the early years of the litigation. The trial court was right. "Some concession must be made to the shortness of human life." Another rather novel argument is advanced by the receiver. It appears that counsel for the insurance company moved for entry of judgment on its behalf upon the opening statement of counsel on the first trial in the District Court, some fourteen years ago, and that the District Court granted the motion and entered judgment. The decision was afterward set aside by this court and the case remanded for trial on the merits. But although the insurance company prevailed before the District Court, the receiver now asks that interest be abated because delay resulted from the incorrect decision of the district court. There is no merit in this argument. We have reviewed the other contentions of the receiver but do not find them persuasive in disturbing the findings of the trial court, which are supported by substantial evidence. In arriving at our determination, it has not been found necessary or advisable to consider the matters set forth in the proposed supplementary record, and leave to file the same has accordingly been denied.

In consideration of the foregoing, the judgment of the District Court is affirmed.