BERNICE B. DONALD,
Circuit Judge, dissenting.
My review of the issues presented here leads me to the conclusion that the majority’s approach to modifying the scope of the retirees’ vested health care benefits, both past and present, involves a misapprehension of the relevant law. While reasonableness is a common standard in the law, I cannot agree that resorting to what is reasonable provides the proper analytical framework in the instant case. When faced with contract terms that result in unanticipated consequences for the parties, courts are naturally tempted to play the role of arbiter and seek to resolve the case equitably. This Court, however, is one of *687 law and not equity. Because the resolution of this case, as well as the prior appeal, represents a departure from current law, I respectfully dissent.
When affirming in part the district court’s first grant of summary judgment to Plaintiffs in the instant dispute, this Court held that the retirees “have a vested right to receive health care benefits for life.” Reese I, 574 F.3d at 327. On this issue, Reese I was consistent with prior decisions of this Court holding that when an employer ties eligibility for welfare benefits to eligibility for pension benefits those welfare benefits vest for life. Noe v. PolyOne Corp., 520 F.3d 548, 558 (6th Cir.2008); Yolton v. El Paso Tenn. Pipeline Co., 435 F.3d 571, 582-83 (6th Cir.2006); McCoy v. Meridian Auto. Sys., Inc., 390 F.3d 417, 422 (6th Cir.2004); Golden v. Kelsey-Hayes Co., 73 F.3d 648, 656 (6th Cir.1996).
At the same time, the Court reversed the district court’s holding that “these [vested health care] benefits must be maintained precisely at the level provided for in the 1998 CBA.” Reese I, 574 F.3d at 327. The Court remanded to the district court to determine “how and in what circumstances CNH may alter such benefits.” Id. Upon close reexamination, I have determined that our holding that CNH may unilaterally alter Appellees’ vested health care benefits was in error, and the majority’s resolution of the ease fails to correct this error.
While the “law of the case” doctrine typically prevents an appellate court from reconsidering a prior decision on a subsequent appeal, that doctrine is “salutary” and designed to support a specific policy rationale: bringing an end to litigation. General Am. Life Ins. Co. v. Anderson, 156 F.2d 615, 618-19 (6th Cir.1946). Accordingly, our holding in Reese I is not immutable. This Court’s precedent recognizes that there is “no occasion to doubt the abstract power of an appellate court, upon a second review, to reach a result inconsistent with its decision on the first review of the same case.” Chesapeake and Ohio R.R. Co. v. McKell, 209 F. 514, 516 (6th Cir.1913) (citing Messinger v. Anderson, 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912)). Furthermore, revisiting Reese I’s holding on the scope of retirees’ vested health care benefits and affirming the district court’s grant of summary judgment to Plaintiffs would bring an end to this protracted litigation. I would, therefore, take the unusual step of correcting our past error with the aim of deciding the case in a manner more firmly grounded in the law.
Several decisions of this Court, as well as Supreme Court precedent, express the principle that, once a retiree’s health care benefits have vested for life, an employer’s unilateral modification of the scope of those benefits is a violation of the Labor Management Relations Act. Yolton, 435 F.3d at 578 (“If a welfare benefit has vested, the employer’s unilateral modification or reduction of those benefits constitutes a LMRA violation.”); see also Allied Chemical & Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Co., Chemical Division, 404 U.S. 157, 181 n. 20, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971) (“Under established contract principles, vested retirement rights may not be altered without the pensioner’s consent. The retiree, moreover, would have a federal remedy under § 301 of the Labor Management Relations Act for breach of contract if his benefits were unilaterally changed.” (citation omitted)); Schreiber v. Philips Display Components Co., 580 F.3d 355, 364 (6th Cir.2009); Winnett v. Caterpillar, Inc., 553 F.3d 1000, 1009 n. 5 (6th Cir.2009); Maurer v. Joy Techs., Inc., 212 F.3d 907, 914 (6th Cir.2000); UAW v. Loral Corp., 107 F.3d 11, 1997 WL 49077 *688 at *3 (6th Cir.1997) (“It might well be sensible for the parties to agree to allow the employer to retain some flexibility to deal with future vicissitudes, but such an arrangement must be agreed to in the contract. It cannot be imposed unilaterally by the employer or the courts.”); UAW v. Yard-Man, Inc., 716 F.2d 1476, 1482 n. 8 (6th Cir.1983).
The Maurer case is especially relevant to this discussion because the Maurer court confronted the same issues, in the same procedural posture, that this Court dealt with in Reese I: whether unclear language in a CBA indicated that “the parties intended the retirement benefits either to vest as lifetime benefits or to terminate at the end of the ... term of the CBA granting the benefits.” Maurer, 212 F.3d at 911. After setting out the relevant contractual language, the Maurer court elucidated the principles applicable to in- ' terpretation of CBAs. One of those principles squarely applies to the instant case: “If the parties intended to vest benefits and the agreement establishing this is breached, there is-... a LMRA violation.” Id. at 914.
Thus, clearly established precedent, in this Circuit leads to the conclusion that, because retirees’ health care benefits vested for life, the level of those benefits must be deemed vested in scope and not subject to unilateral modification by CNH. Accordingly, the district court correctly applied the law of this Circuit when it held on remand that “even if changes can be made to retiree vested health care benefits, those changes must be reached through negotiation and agreement between the union and the employer.” Reese v. CNH Global N.V., No. 04-70592, 2011 WL 824585, at *10 (E.D.Mich. March 3, 2011).
The district court’s conclusion is also consistent with this Circuit’s principle that “basic rules of contract interpretation apply” when federal courts fashion a body of federal common law for interpretation of collective bargaining agreements. Noe, 520 F.3d at 552. As a general rule, contracts containing continued performance obligations cannot be modified unless “the modification is fair and equitable in view of circumstances not anticipated by the parties when the contract was made.... ” Restatement (Second) of Contracts § 89(a) (1981). Such a modification, furthermore, must comply with the general rules of contract formation, including mutual assent: “Obligations under a collective bargaining agreement, like those under contracts in general, rest ultimately on the principle of mutual assent.....” Operating Eng’rs Pension Trust v. Gilliam, 737 F.2d 1501, 1503 (9th Cir.1984). Because the retirees have not consented to the modifications proposed by CNH, I would hold under traditional principles of contract law that CNH cannot unilaterally modify the retirees’ vested health care benefits.
I recognize that the terms of the 1998 CBA, as interpreted according to Sixth Circuit precedent, posé a fundamental problem for the employer: how to fulfill its open-ended obligation to provide the health care benefits described in the CBA in spite of the rapid change and growth in the health care and health insurance industries. While this case presents a difficult choice between diametrically opposed interpretations of the 1998 CBA, it is the parties to the contract — not the court— who bear the burden of solving this dilemma. Presumably the parties have a shared interest in reaching an accommodation which ensures the retirees the continuity of health care coverage to which they are contractually entitled without bankrupting the employer or obligating it to provide services which are no longer appropriate. The Court’s role in this context is to underscore that such an accommodation can *689 not be imposed by one party on the other, or by the court. Loral Corp., 1997 WL 49077, at *3. The majority’s thoughtful analysis of the policy issues thoroughly addresses the concerns of the parties, especially the employer. However, while those issues are important, it is the law that should determine the outcome of this case.
As mentioned above, the majority relies on our conclusion in Yolton v. El Paso Tennessee Pipeline Co. and other cases to support Reese I’s conclusion that the retirees’ health care benefits vested for life. The majority, however, does not apply Yolton’s plain statement of the law regarding unilateral modification of vested welfare benefits: “If a welfare benefit has vested, the employer’s unilateral modification or reduction of those benefits constitutes a LMRA violation.” 435 F.3d at 578. Additionally, the other cases the majority cites to support its statement that “the vesting conclusion in the context of healthcare benefits provides an evolving, not a fixed, benefit” say nothing about the scope of welfare benefits. Those cases deal only with this Court’s rule that tying eligibility for welfare benefits to eligibility for pension benefits evidences an intent to vest those welfare benefits for life. Id. at 583; see also Noe, 520 F.3d at 558; McCoy, 390 F.3d at 422; Golden, 73 F.3d at 656.
The majority also errs in its choice of standard for determining whether CNH’s modifications to the scope of the retirees’ health care benefits are reasonable. The majority relies on the United States Court of Appeals for the Seventh Circuit’s opinion in Zielinski v. Pabst Brewing Co., 463 F.3d 615 (7th Cir.2006). The standard articulated in Zielinski, however, is not applicable to this ease for two reasons. First, as discussed above, this Circuit’s case law prohibits CNH from unilaterally modifying the retirees’ vested health care benefits. Second, as the district court set forth in its opinion, Zielinski is factually distinguishable from the instant dispute. Reese, 2011 WL 824585, at *7 n. 9. In Zielinski, the Seventh Circuit confronted a situation where the only evidence of the retiree benefits package was an old brochure describing the retirees’ prescription drug coverage in very general terms; neither party could provide the court with a copy of the contract alluded to in the brochure. 463 F.3d at 619. Accordingly, the Seventh Circuit had to step in and fill the gaps related to coverage in the shutdown agreement that granted vested health care benefits to the retirees. Id. at 619-20. In order to fill the gap, Judge Posner relied on the Seventh Circuit’s “reasonably commensurate” test. Id. at 619-21.
Unlike the Seventh Circuit in Zielinski, however, this Court has no gap filling role to play in the instant case. We know exactly what the parties agreed to in 1998: “The Group [Benefit] Plan over forty-one pages sets forth in extensive detail the types of benefits and levels of coverage that the [retirees’] and [CNH] agreed to through collective bargaining.” Reese, 2011 WL 824585, at *7. Accordingly, Zielinski does not provide the appropriate lens for our review of this case.
In addition to the above legal errors, the majority also mischaraeterizes the nature of the shift from the indemnity plan to managed care under the 1998 Group Benefit Plan, as well as how the parties previously modified the retirees’ benefits. The majority claims that the negotiated and collectively bargained shift from an indemnity plan to a managed care plan in 1998 supports its conclusion that “the parties did not perceive the relevant CBAs as establishing fixed, unalterable benefits.” Both Reese I and the majority opinion, however, are incorrect in their assertion that “managed care ... represented a re *690 duction in the effective choices of coverage available for all retirees and the coverage actually provided to many, if not most, of them.” Reese I, 574 F.3d at 325. This erroneous conclusion is central to the majority’s reasoning: retirees’ benefits can be unilaterally modified now because they did not previously object to a “reduction” in those benefits. The district court, however, embarked on a thorough analysis of both the indemnity and managed care plans and reached the opposite conclusion as to both effective choices and coverage.
On the issue of choice, the district court found, based on evidence submitted by the retirees, that, under the managed care plan, “close to 100% of the providers who had treated [CNH] employees were participants in the network and 100% of the hospitals in the area were within the network. Promises also were made that doctors not in the network would be approached to join.” Reese, 2011 WL 824585, at *9. Virtually all of the same doctors, in the same facilities, were available to the retirees after shifting from the indemnity plan to managed care. This evidence does not support the majority’s conclusion that the managed care plan “represented a reduction in the effective choices of coverage available for all retirees.” Reese I, 574 F.3d at 325. The same is true of the coverage actually provided to retirees.
On the issue of coverage, the district court found that while the indemnity plan covered 100% of the “reasonable and customary charges” for Type A (hospital expenses) and Type B (surgery and in-patient procedures) benefits, it only covered 80% of the more common Type C benefits (out-of-hospital doctor visits). Reese, 2011 WL 824585, at *9. The indemnity plan also included a $50,000 per person lifetime maximum cap on benefits. Id. The managed care plan, conversely, required no retiree contributions, contained no “reasonable and customary” limitation, and had no lifetime maximum: “Thus Plaintiffs obtaining care ‘in-network’ under the managed care plan received better coverage than they did under the indemnity plan; those obtaining care for routine services ‘out-of-network’ were responsible for the same 20% of the costs that they were paying under the indemnity plan.” Id. The evidence thus bears out CNH’s contemporaneous claim that the negotiated shift to managed care in 1998 actually provided “improvements” for the retirees. Id. So, while I agree with Reese /’s assertion that “the resetting of health-care benefits for previously retired employees might not concern anyone if each change upgraded the existing package of benefits,” Reese I, 574 F.3d at 325, I cannot join the majority’s conclusion that the 1998 shift from the indemnity plan to managed care resulted in a reduction of the retirees’ benefits.
Finally, the majority also reasoned that “[p]ast changes to retiree healthcare benefits ... had not been collectively bargained,” and this fact supports its conclusion that CNH may unilaterally modify retirees’ benefits now. This statement, however, is not followed by factual support; the assertion is followed by a citation to the legal proposition that a union is not required to negotiate on behalf of its retirees in collective bargaining. Even accepting Reese /’s claim that those CNH employees who retired between 1994 and 1998 did not consent to shifting from the indemnity plan to managed care, Reese I, 574 F.3d at 324, the agreement which led to the change was collectively bargained between the union and current employees, a far cry from CNH’s attempt to unilaterally modify those benefits.
Because Plaintiffs have demonstrated they are entitled to judgment as a matter *691 of law, I would affirm the district court’s grant of summary judgment to Plaintiffs and overrule our previous holding that CNH may unilaterally modify the scope of Plaintiffs’ retirement health benefits under the 1998 CBA. Because the majority adheres to its original decision regarding the scope of the retirees’ benefits, I respectfully dissent.