## TICONIC NATIONAL BANK et al. v. SPRAGUE et al.

No. 374.  Argued February 2, 3, 1938.—Decided March 7, 1938.

*Mr. George P. Barse,* with whom *Messrs. F. Harold Dubord, Trevor V. Roberts,* and *James Louis Robertson* were on the brief, for petitioners.

*Mr. Harvey D. Eaton* for respondents.

By leave of Court, *Acting Solicitor General Bell,* and *Messrs. Russell L. Snodgrass* and *Frederick E. Baukhages, III,* filed a brief on behalf of the Reconstruction Finance Corporation, as *amicus curiae,* in support of respondents.

MR. JUSTICE REED delivered the opinion of the Court.

The question for decision is whether or not a secured creditor of a national bank, holding a non-interest bearing claim, is entitled to interest for any period subsequent to the insolvency of the bank, when the assets on which he has a lien are sufficient to pay the principal and interest but the total assets of the bank are not sufficient to pay in full all creditors' claims as of the date of insolvency.

On March 28, 1931, respondent Lottie F. Sprague delivered $5,022.18 to the trust department of the Ticonic National Bank of Waterville, Maine, in trust, under an agreement which authorized the trustee to invest in bonds or securities and to deposit at least $1,000 in its savings department at usual rates of interest; required specified monthly payments, subject to certain conditions, to Margaret Sprague, also a respondent here; and reserved to the grantor the right to revoke the trust and resume possession of the trust funds.

The Ticonic Bank had been authorized by the Federal Reserve Board to act in a trust capacity, as provided in § 11 (k) of the Federal Reserve Act, as amended (12 U. S. C., § 248 (k)). That Act provides that funds held in trust awaiting investment "shall not be used by the bank in the conduct of its business unless it shall first set aside in the trust department United States bonds or other securities" approved by the Board of Governors of the Federal Reserve System, and further provides that "In the event of the failure of such bank the owners of the funds held in trust for investment shall have a lien on the bonds or other securities so set apart in addition to their claim against the estate of the bank."

Pending investment of funds under the Sprague trust, and pursuant to its resolution implementing the statutory provision just quoted, the Ticonic Bank placed the funds of this trust, along with other trust funds awaiting investment or distribution, as a deposit in its commercial checking department to the credit of its trust department, and secured the total amount of such funds by setting aside in the trust department bonds, including $20,000 Kingdom of Denmark 6's, 1942, at least equal in value to the total amount of such deposits.

On July 29, 1935, respondents, the settlor and beneficiary, brought this suit in the District Court for Maine to have the bonds held as security with respect to the trust. It appears that on August 3, 1931, Ticonic Bank sold its assets (including the Denmark bonds) to the Peoples National Bank (later called Peoples-Ticonic National Bank) in consideration of its agreement to "assume or pay all the indebtedness of said Ticonic Bank to its depositors"; that Ticonic Bank then went into voluntary liquidation; that on March 4, 1933, the Peoples-Ticonic Bank was closed; that Arthur Picher was appointed receiver for Peoples-Ticonic Bank on November 6, 1933, and subsequently, on June 28, 1934, for the Ti-

conic Bank, which had been continuing its voluntary liquidation.

The lower courts treated the suit, brought against both banks and against Picher as receiver, as one to assert and enforce the lien protecting the uninvested funds. They held that, in view of § 11 (k) of the Federal Reserve Act, as amended, respondents had acquired a lien upon the bonds set apart by the Ticonic Bank to secure the deposit of the trust department; and that this lien had never been discharged or divested and so extended to the proceeds of the Denmark bonds, which had been sold by the receiver for $20,722.66. We do not pause to state the conclusions of fact and of law by means of which the lower courts arrived at this result, for in the grant of the writ of certiorari this Court declined to review the ruling that a statutory lien for the protection of the owners of the funds held for investment extended to the proceeds of the Denmark bonds, the lower courts having predicated their decision in large part on the facts of this particular case.

The decrees below did not end with the matters just stated. The District Court, finding that the proceeds of the bonds exceeded the trust funds on deposit,[1] held the respondents entitled to payment in full of $3,649.65, the amount to which the Sprague trust account had been reduced, with interest from the date of the filing of the bill of complaint. At first the Circuit Court of Appeals reversed that part of the decree allowing interest, but on rehearing it affirmed the decree in toto, approving the allowance of interest out of the proceeds of the Denmark bonds, which it assumed were sufficient to meet with in-

---

[1] The total uninvested trust funds on deposit in the commercial department of the Ticonic Bank amounted to about $10,000 at the time of the sale of its assets, and to about $12,000 when the Peoples-Ticonic Bank was closed in 1933.

terest the amount of all trust deposits. It ruled that although the requirement of ratable distribution precludes the recovery of interest against the general funds of an insolvent national bank, the general creditors have no rights in the trust funds here involved until after the secured claims are paid.

The attention of this Court was called to the fact that the ruling conflicted with decisions in other circuits, where secured creditors were held not entitled to any interest after the suspension of the national bank,[2] and for this reason certiorari was granted, limited to this question of interest.

As an incident to the right to recover an unexpended balance in a deposit, a depositor is entitled to interest as damages for the failure to pay that balance upon demand.[3] Compare *Stewart* v. *Barnes,* 153 U. S. 456, 462; *United States* v. *North Carolina,* 136 U. S. 211, 216.

The bank's obligation to pay interest as damages for the detention of the debt is not cut off by suspension of its business and receivership. The principle has been established, and claimants held entitled to such interest, in cases where the principal amount of each of the claims was paid in full from the assets of the bank (*National Bank* v. *Mechanics' National Bank,* 94 U. S. 437), including if necessary the double liability of the shareholders (*Richmond* v. *Irons,* 121 U. S. 27, 64).

---

[2] *Richman* v. *First Methodist Episcopal Church,* 76 F. (2d) 344, 346 (C. C. A. 3d), certiorari denied, *Long* v. *First Methodist Episcopal Church,* 296 U. S. 593; *Douglass* v. *Thurston County,* 86 F. (2d) 899, 909 (C. C. A. 9th); *Fash* v. *First National Bank,* 89 F. (2d) 110, 112 (C. C. A. 10th).

[3] We need not explore petitioner's suggestion, that if interest is granted at all it should be measured from an earlier date than that of the judicial demand contained in the bill of complaint, since respondent has filed no cross-petition for certiorari complaining of that restriction (*Langnes* v. *Green,* 282 U. S. 531, 536–538).

It is true that in the liquidation of national banks, dividends from the general funds on unsecured claims are made pro rata upon the amount of each claim as of the date of the insolvency, *White* v. *Knox,* 111 U. S. 784. This method of distribution gives a proportional part of the available funds to each creditor, in accordance with the statute requiring a "ratable dividend." R. S. § 5236. Whether the reason for this method of determining dividends is to avoid prejudice from the inevitable delay of court proceedings for liquidation (*In re Humber Ironworks & Shipbuilding Co.,* IV Ch. App. Cas. 643, 646; *American Iron & Steel Mfg. Co.* v. *Seaboard Air Line Ry.,* 233 U. S. 261, 266; cf. *People* v. *American Loan & Trust Co.,* 172 N. Y. 371, 379; 65 N. E. 200); to facilitate administration (*Sexton* v. *Dreyfus,* 219 U. S. 339, 344; *Chemical National Bank* v. *Armstrong,* 59 Fed. 372, 378); or because on that date the creditors acquire a right in rem against the assets in the hands of the receiver (*Chemical National Bank* v. *Armstrong, supra,* 379; *Merrill* v. *National Bank of Jacksonville,* 173 U. S. 131, 140; *Sexton* v. *Dreyfus, supra,* 345) is immaterial. Dividends are paid on that basis. It is in order to assure equality among creditors as of the date of insolvency that interest accruing thereafter is not considered. But interest is proper where the ideal of equality is served, and so a creditor whose claim has been erroneously disallowed is entitled on its allowance to interest on his dividends from the time a ratable amount was paid other creditors. *Armstrong* v. *American Exchange National Bank,* 133 U. S. 433, 470.

The rule of *White* v. *Knox, supra,* does not require that interest be denied to the secured creditors unless the principle of equality of distribution is to be applied as between all creditors. Secured creditors have two sources of payment for their claims—the liability of the debtor and the

liability of the pledged or mortgaged assets. One is personal, the other in rem. The liability in personam of the bank gives rise to a claim in rem against the free assets in the hands of the receiver; the claim in rem against the security continues as a claim in rem against that same security. With respect to the former the secured creditors have merely the same rights as any general creditor, and in so far as dividends are paid to secured creditors from free assets, they share ratably with the unsecured creditors, and their claims bear interest to the same date, that of insolvency. Compare *Merrill* v. *National Bank of Jacksonville,* 173 U. S. at 146; *Aldrich* v. *Chemical National Bank,* 176 U. S. 618, 638. But to the extent that one debt is secured and another is not there is manifestly an inequality of rights between the secured and unsecured creditors, which cannot be affected by the principle of equality of distribution (*American Iron & Steel Mfg. Co.* v. *Seaboard Air Line Ry., supra,* at 266; *Chemical National Bank* v. *Armstrong, supra,* at 376–377), and interest accruing after insolvency may not be withheld on account of that principle.

The rule as to the date to which interest is to be allowed on secured claims sharing pro rata with unsecured claims, cannot apply to the disposition of pledged or mortgaged assets subject to the lien of individual creditors, unless we are to disregard the rights in these assets prior to insolvency. But "liens, equities or rights arising . . . prior to insolvency and not in contemplation thereof, are not invalidated." *Scott* v. *Armstrong,* 146 U. S. 499, 510; *Merrill* v. *National Bank of Jacksonville,* 173 U. S. 131, 145. By contract or, as in this case, by statute, the secured creditors gain or are given a lien on or right in property "in addition to their claim against the estate of the bank." Section 11 (k) of the Federal Reserve Act as amended. The statutory lien prior to receivership withdrew the pledged security from the assets

of the bank available to general creditors, in so far as might be necessary to satisfy the lien. Though title to the collateral was in the name of the bank, it was subject to this lien, and to that extent the property pledged could not properly be said to belong to the bank for purposes of distribution to creditors. *Scott* v. *Armstrong, supra* at 510.

As the obligation to pay interest is not destroyed by the insolvency and as the rights of the secured creditor in his collateral, contractual or statutory, are likewise unaffected, we are of the opinion that a secured creditor of a national bank in receivership may enforce his lien against his security, where it is sufficient to cover both principal and interest, until his claim for both is satisfied.

With respect to analogous liquidations the rule just announced has long been in force.[4] This Court has already held that a lienholder may look to his lien not only for the principal but also for interest accruing up to the date of payment, though his debtor has gone into bankruptcy (*Coder* v. *Arts,* 213 U. S. 223, 245, affirming, 152 Fed. 943, 950) or into equity receivership (*American Iron & Steel Mfg. Co.* v. *Seaboard Air Line Ry.,* 233 U. S. 261), and though interest will be denied the unsecured creditors if the assets are insufficient to pay all claims in full. Compare *In re Humber Ironworks & Shipbuilding Co.,* IV Ch. App. Cas. 643, with *In re Humber Ironworks & Shipbuilding Co.,* V Ch. App. Cas. 88. The same rule was applied to state banks in *Washington-Alaska Bank* v. *Dexter Horton National Bank,* 263 Fed. 304, 306.

---

[4] Compare 7 Vin. Abr. 110: "*A mortgagee shall have his interest run on* upon a bankrupt's estate, because he hath a right in rem, *but as to other interest, it ceaseth on the bankruptcy.* Per Ld. Chan. King, 18 July 1729."

Petitioners suggest that the rule just laid down may have the effect of penalizing the unsecured creditors for the precaution of the receiver in litigating doubtful claims asserted against segregated assets. This could be true only where the interest accruing to the secured creditors during the pendency of the litigation exceeds the appreciation in value of, and the income from, the security. And since in many cases if the receiver is successful his conduct of the litigation will inure to the advantage of the general creditors, they may fairly be charged with the expenses of contesting the claim, including interest by way of damages. Cf. *Chemical National Bank* v. *Armstrong, supra,* 59 Fed. at 384.

*Affirmed.*

MR. JUSTICE CARDOZO took no part in the consideration or decision of this case.