427

In re Nebraska State Bank of Valentine, Valentine, Nebraska, insolvent. Frank L. Colburn et al., appellees and cross-appellants, v. Henry E. Ley, director of banking as receiver and liquidating agent of Nebraska State Bank of Valentine, Valentine, Nebraska, insolvent, appellant and cross-appellee.

215 N. W. 2d 869

Filed March 7, 1974. No. 39186.

Bernard B. Smith, for appellant.

W. Jerry O'Kief, for appellees.

Heard before White, C. J., Spencer, Boslaugh, McCown, and Clinton, JJ., and Ronin and Hastings, District Judges.

Spencer, J.

This appeal involves the allowance of interest on the plaintiffs' deposit in the Nebraska State Bank of Valentine. The claim was classified as a valid preferred claim but was not paid at the time other depositors in the same class were paid. The trial court allowed interest. We affirm as modified.

The Nebraska State Bank of Valentine was placed into receivership for liquidation in the fall of 1964. Frank L. Colburn, who was an officer, director, and stockholder of the bank, with his wife filed a claim for money on deposit in the bank. On October 14, 1965, the defendant filed an order with the Department of Banking approving the claim, and directed that it be allowed. The final claims of depositors in plaintiffs'

class were paid on December 9 and 10, 1965. However, the receiver withheld payment to plaintiffs pending a determination of any personal liability of Mr. Colburn.

The receiver subsequently instituted legal proceedings against Mr. Colburn for neglect and dereliction of duty. A jury found against the receiver but the trial judge set aside the verdict. On appeal to this court the jury verdict was reinstated, absolving Mr. Colburn from any liability relating to the bank's failure. Department of Banking v. Colburn (1972), 188 Neb. 500, 198 N. W. 2d 69. The mandate thereon was filed in the District Court for Cherry County on May 30, 1972.

Plaintiffs thereafter made further application for payment of their claim, together with interest thereon from the date the claim had been allowed by the receiver.

On February 13, 1973, it was stipulated by the parties that the receiver would pay the principal amount of said claim into court, together with a separate check for interest in the amount of $1,430.10, and plaintiffs would have the right to withdraw the principal amount so paid without prejudice to the claim for interest on the principal sum.

The trial court found plaintiffs should be allowed interest at the rate of 6 percent per annum from October 14, 1965, the date of the allowance of the claim, to May 30, 1972, and 7 percent thereafter unless it is shown that the Department of Banking made less interest thereon than 6 percent, and then upon such showing the Department of Banking should pay interest at the rate the receiver earned on the $30,813.87. Plaintiffs cross-appealed from the allowance of less than the legal rate. The issue herein is whether plaintiffs are entitled to interest and if so, at what rate or rates.

It is undisputed that depositors and holders of exchange have priority over all other claims except those for taxes. § 8-1,110, R. R. S. 1943. On the question of interest, defendant cites the case of Thomas v.

Western Car Co. (1893), 149 U. S. 95, 13 S. Ct. 824, 37 L. Ed. 663, for the following proposition: "As a general rule, after property of an involvent passes into the hands of a receiver or of an assignee in insolvency, interest is not allowed on the claims against the funds. The delay in distribution is the act of the law; it is a necessary incident to the settlement of the estate." Defendant states: "* * * although the broad statements in Thomas, supra, would indicate that interest would in no event run after the appointment of a receiver, it seems to have been limited in its application to cases where the assets were less than the liabilities. So, as a matter of fact, interest runs on claims of equal rank against the debtor after the appointment of a receiver but for convenience it will not be computed where the assets are not sufficient to pay the principal of the obligations."

Defendant, however, fails to recognize the clear distinction between payment of interest on claims filed with the receiver and payment of interest on delayed dividends or distributions to which the creditor was entitled but which were delayed pending litigation. See, 10 Am. Jur. 2d, Banks, § 779, p. 745; Ticonic National Bank v. Sprague (1938), 303 U. S. 406, 58 S. Ct. 612, 82 L. Ed. 926.

Plaintiffs rely on the landmark case of Armstrong v. American Exchange National Bank of Chicago (1890), 133 U. S. 433, 10 S. Ct. 450, 33 L. Ed. 747. In that case a creditor's claim was contested and not decided until after a dividend had been paid to other creditors. The court recognized the general proposition that creditor's claims do not ordinarily draw interest, beyond the date on which the bank failed, but created an exception which has become the general rule in cases like the instant one. The Supreme Court said: "Interest upon the dividend which it (the creditor) ought to have received on the 31st of October, 1887, is a different mat-

ter. The allowance of that interest is necessary to put the plaintiff on an equality with the other creditors."

Armstrong has been favorably commented upon and followed in other cases by the United States Supreme Court and various state and federal courts. Republic Realty Co. v. Phoenix Savings & Loan Assn., Inc. (1968), 254 Md. 532, 255 A. 2d 39, summarizes the key precedents relying on the Armstrong rule. The following quotation from Bryant v. B. & L. Farms Co. (5th Cir., 1965), 343 F. 2d 581, is pertinent herein: "* * * Chemical Nat. Bank of City of New York v. Armstrong, as Receiver, 6 Cir., 59 F. 372, 384, 28 L. R. A. 231, where the court * * * held that: 'It is equitable and just, therefore, that the share of the other creditors in the assets of the bank should be reduced by enough to pay the interest on the delayed dividends on the $100,000 from the date of the rejection of the claim until such dividends are paid. This conclusion is fully sustained by the decision of the supreme court in the case of Armstrong v. Bank, 133 U. S. 433, 10 Sup. Ct. 450 (33 L. Ed. 747).' It is well to observe that we are not here dealing with interest on claims in bankruptcy, but interest on dividends withheld after creditors of the same class had been paid the dividends due them." See, also, 9 C. J. S., Banks and Banking, § 758, p. 1324; 10 Am. Jur. 2d, Banks, § 779, p. 745.

Paraphrasing Bryant v. B. & L. Farms Co., *supra*, it is equitable and just, and in line with the better reasoned authorities, that interest at the legal rate be paid on dividends withheld from plaintiffs after the time dividends were paid to the other depositors in their class. In no other way can plaintiffs be put upon a footing with those depositors. When payment of a dividend is deferred by reason of an unsuccessful contest of an alleged setoff, the creditor so delayed should be allowed interest on the dividend to put that creditor on an equality with the other creditors in his class.

Defendant in his brief argues: "Where the assets are insufficient to pay the principal of all the claims against the estate, an award of interest to a particular claimant flies in the face of the equities of the situation and deprives other claimants of the same class from acquiring an equitable adjustment of their claims." Actually, the equities here are with the plaintiffs. All other claimants in their class were paid in full. Payment of plaintiffs' claim was delayed for 7 years thereafter pending litigation of other possible liability of Frank L. Colburn. The receiver has had possession of the $30,813.87 for that period. Undoubtedly it has been earning interest for some portion of that period. The plaintiffs' claim was never questioned. It was allowed in full. The only question was whether it could be applied on a possible liability as an officer or director, which liability was determined adversely to the defendant. The authorities clearly sustain the plaintiffs' position.

Against plaintiffs' argument for interest predicated upon concepts of equality among depositors, defendant interposes a very imaginative hypothesis concerning subrogation. The Federal Deposit Insurance Corporation and the correspondent banks furnished the additional funds necessary for all depositors of the State Bank of Valentine to be paid in full. The amount furnished by the correspondent banks is not disclosed. It represented, however, a portion of the funds of the Nebraska State Bank of Valentine on deposit with the correspondent banks. Certain of the correspondent banks claimed some of those funds on the theory that the former president of the insolvent bank had discounted spurious commercial paper with them. Defendant's argument is premised on the theory that the other depositors in plaintiffs' class had not been paid in full because the FDIC and the correspondent banks furnished the funds to pay off those depositors and

therefore they are subrogated to their claims.

There are two problems with this ingenious analysis. First, even if true, it must fail for lack of proof. Second, subrogation appears to have been waived and surrendered in this case by mutual agreement of the purported subrogees.

While the bank was insolvent, it was not without funds. Insofar as the bank possessed funds for distribution to depositors it ought to treat all the depositors in plaintiffs' class equally. If the FDIC and the correspondent banks are subrogated to the extent of the funds they furnished, could the subrogation agreement have relevance to the funds the bank had available for payment from its own resources?

Further, the FDIC is compelled by the terms of its insurance to pay all the depositors of plaintiffs' class, including the plaintiffs. If it were subrogated to the claims of all depositors but the plaintiffs after payment, is it meeting the terms of its contract?

In any event, there is no authority or proof of any sort presented by defendant herein which intimates that the FDIC can use its subrogation rights from the other depositors of plaintiffs' class to the detriment of plaintiffs. Finally, the correspondent banks if subrogated could only be subrogated to the extent they furnished funds necessary to pay depositors. In this connection, we must note that they would furnish such funds only in those instances when the bank's assets plus the FDIC insurance were inadequate for this purpose. The amount of funds so furnished is not disclosed.

What has been said heretofore demonstrates the problem with defendant's argument. Clearly, the correspondent banks cannot interpose their subrogation claim to defeat the payments which plaintiffs should have received from FDIC or plaintiffs' claim to a ratable share of the bank's funds. To accept defendant's argument would permit the correspondent banks to utilize a

subrogation theory to impair plaintiffs' preexisting legal rights.

While not necessary to a decision herein, we believe the subrogation claim has been waived and abandoned by the purported subrogees. The receiver made an application to compromise and settle claims and filed therewith a settlement agreement executed by the Department of Banking, FDIC, and the various correspondent banks. Both the application and the settlement agreement were approved by the court.

The trial court conditioned the allowance of interest to permit the receiver to show that less than 6 percent was earned on the $30,813.87, if such was a fact. We find no authority for this procedure and none has been called to our attention.

Section 45-103, R. R. S. 1943, before the 1972 amendment, provided: "Interest on all decrees and judgments for the payment of money shall be from the date of the rendition thereof at the rate of six dollars upon each one hundred dollars annually until the same shall be paid; * * *." The 1972 amendment, which became effective July 6, 1972, increased the rate to eight dollars per one hundred dollars.

From what date should interest accrue? Plaintiffs' contend their claim should draw interest from the time allowed, which in this case would be October 14, 1965. Under section 8-1,108, R. R. S. 1943, a claimant may object to the director's classification and order within a period of 30 days. Consequently, the amount of the claim is not finally allowed or determined until the expiration of that period. Until that time, dividends should not be paid. Thereafter, dividends should be paid within a reasonable time if the funds are available to do so. In this case, the parties concede that the other depositors in plaintiffs' class were paid by December 9 and 10, 1965. Inasmuch as we are trying to maintain plaintiffs' equality with others in their class, we

determine that the interest herein started to accrue on December 10, 1965. Interest is therefore payable at the rate of 6 percent from December 10, 1965, to July 6, 1972, and thereafter at the rate of 8 percent to January 29, 1973.

For the reasons given, the judgment is affirmed as modified.

AFFIRMED AS MODIFIED.