Sol Neil CORBIN, as Trustee in Bankruptcy of Franklin New York Corporation, Plaintiff-Appellant,

and

Connecticut General Life Insurance Company, Berkshire Life Insurance Company, Connecticut Mutual Life Insurance Company, the Minnesota Mutual Life Insurance Company, Morgan Guaranty Trust Co., as Trustee, New England Mutual Life Insurance Company, Occidental Life Insurance Company of California, the Penn Mutual Life Insurance Company, San Francisco City and County Employees' Retirement System, Shell Pension Trust, Southland Life Insurance Company, State of Wisconsin Investment Board, United California Bank, as Trustee, United States Trust Company of New York, as Trustee, and Western Life Insurance Company, Plaintiff-Intervenors-Appellants,

v.

FEDERAL RESERVE BANK OF NEW YORK and Federal Deposit Insurance Corporation, in its Corporate Capacity and as Receiver of Franklin National Bank, Defendants-Appellees.

Nos. 850, 1048, Dockets 79–7702, 79–7703.

United States Court of Appeals, Second Circuit.

Argued May 19, 1980.

Decided July 25, 1980.

Robert L. King, New York City (Debevoise, Plimpton, Lyons & Gates, Sally D. Turner, New York City, of counsel), for appellants Connecticut Gen. Life Ins. Co., et al.

William E. Hegarty, New York City (Cahill, Gordon & Reindel, Allen S. Joslyn, Michael P. Tierney, Patricia A. Pickrel, New York City, of counsel), for defendant-appellee Federal Reserve Bank of New York.

William E. Kelly, New York City (Casey, Lane & Mittendorf, Alan R. Wentzel, Chris-

topher R. Belmonte, New York City, of counsel), for defendant-appellee Federal Deposit Ins. Corp.

David Simon, New York City (Barrett Smith Schapiro Simon & Armstrong, Michael O. Finkelstein, Joel M. Gross, Eric J. Anderson, New York City, of counsel), for plaintiff-appellant Corbin.

Before OAKES and MESKILL, Circuit Judges, and BONSAL, District Judge.*

OAKES, Circuit Judge:

This is an appeal by certain unsecured creditors of Franklin National Bank (FNB) from a judgment of the United States District Court for the Southern District of New York, Milton Pollack, Judge, with opinion reported at 475 F.Supp. 1060 (S.D. N.Y.1979). Among these appellants is the trustee in bankruptcy of Franklin New York Corporation (FNYC). As the holding company of FNB—a bank whose 1974 insolvency has spawned considerable litigation—FNYC is not only an FNB creditor but also the owner of all outstanding FNB stock (except directors' qualifying shares). The remaining appellants are intervenors who hold subordinated FNB debentures.

This suit sought a reduction in the interest payable to the Federal Reserve Bank of New York (FRB) out of the FNB estate—interest owed under the terms of FRB's agreement to forbear for three years from the collection of a past-due $1.7 billion secured debt of FNB. The $1.7 billion debt resulted from FRB's efforts to shore up FNB during the summer of 1974 through emergency, short-term loans. The agreement to delay collection of this debt was part of a set of arrangements by the Federal Deposit Insurance Corporation (FDIC) that forestalled an immediate closing of the bank. These arrangements were made with prior judicial approval, *In re Franklin National Bank*, 381 F.Supp. 1390 (E.D.N.Y. 1974), which is required where, as here, the FDIC acting as receiver of a bank decides to purchase and liquidate or to sell the bank's assets, 12 U.S.C. § 1823(d). Here,

---

* Sitting by designation

the arrangements made involved a transfer of some of FNB's assets and liabilities to the European-American Bank, plus a sale of the remaining assets to FDIC in its "corporate" capacity, which agreed to pay off the remaining liabilities as it liquidated the assets. Appellant's basic claim is that FRB had too much of the best side of this deal.

Judge Pollack's earlier opinion, reported in 458 F.Supp. 143 (S.D.N.Y.1978), denying a motion to dismiss the complaint, adequately answers the contentions of FRB and FDIC that the court lacked subject matter jurisdiction, that FDIC had sovereign immunity, and that the Trustee of FNYC lacked standing to complain of FDIC's acts as Receiver of FNB, and we affirm so much of the judgment as relates thereto on that opinion.[1] The principal arguments remaining are those of appellants on the merits, viz., that $60.7 million of interest payable under the forbearance agreement to FRB should be disallowed under the doctrine of *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946), and progeny, and that FDIC as Receiver breached its fiduciary duty. *Vanston* held that it was inequitable for a debtor in reorganization to be required to pay interest on interest, when simple interest payments on mortgage indentures had been suspended by court order. *Id.* at 165, 67 S.Ct. at 241. The claim under *Vanston* here is that $30.2 million of the interest sought by FRB is similarly unlawful interest upon post-insolvency interest, and that the entire $60.7 million at stake represents an unlawful

windfall, contrary to the balance of equities. The fiduciary duty argument focuses more generally on the structure of the deal as a whole.

The factual and commercial background, and the fiduciary duty argument, are more than adequately set forth and dealt with in Judge Pollack's second opinion, 475 F.Supp. 1060 (S.D.N.Y.1979), which is incorporated here by reference. We substantially affirm on that opinion,[2] merely taking this opportunity to explore a little further the *Vanston* arguments of appellants. The interest arrangements required payment to FRB after three years of simple interest at a fixed rate of 7.52% for the three years during which full repayment was deferred (less an adjustment for liquidation expense), with the FDIC guaranteeing payment of this amount. This sum has been paid and is not challenged here. An additional amount of interest—contingent on the availability of funds in the estate—was also required. This extra interest increased the rate from 7.52% to 8.5%, compounded annually, but with payment delayed until funds became available. Essentially Judge Pollack held that these arrangements were not unfair. 475 F.Supp. at 1068–70. More specifically, he held that they did not involve improper self-dealing or a breach of fiduciary duty on the part of FDIC (in the light of the statutory contemplated duality of its role), *id.* at 1070, and as to the *Vanston* argument said:

> Even if the recoupment provision were to be deemed an agreement to pay compound interest, there is no general federal policy or rule of law against an agree-

---

1. Judge Pollack also held in this opinion that, although the "statutes do give FDIC *in its corporate capacity* the discretion to set the terms and conditions of a purchase of assets from itself as a Receiver (12 U.S.C. §§ 1823(d) and (e))," 458 F.Supp. at 146, the fairness of the actions of the *Receiver* in such a transaction is "not beyond the scope of traditional judicial review," *id.* We find this question of the appropriate scope of review of the Receiver's actions to be a vexing one. The FDIC is clearly authorized by statute to play a dual role in these transactions, and to consider, in addition to the interests of creditors, its own welfare

and that of the economy as a whole. These facts argue against any searching judicial review. On the other hand, creditors may be insufficiently protected if the Receiver's actions are only tested under an abuse of discretion standard, or are not reviewed at all. We need not decide this issue here since we agree with Judge Pollack's second opinion, 475 F.Supp. 1060 (S.D.N.Y.1979), holding that the present arrangements survive even "traditional judicial review."

2. *See* note 1 *supra*.

ment to pay compound interest on obligations incurred by National Banks or their receivers with a Federal Reserve Bank. In particular, the case relied on by plaintiff, *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946), does not establish any rule applicable herein. *Vanston's* disapproval in a reorganization proceeding of a pre-insolvency agreement to pay interest on unpaid interest is of no relevance to the instant review of the post-insolvency agreement made by the Receiver in the course of its obligations under the federal banking laws to wind up the affairs of an insolvent National Bank. At most, the equitable principles invoked in *Vanston* merely sanction the review of the agreement which has been conducted herein; they do not condemn compound interest in all circumstances and do not preclude this Court's finding that the agreement was fair and appropriate.

*Id.* at 1071.

Appellants argue that *Vanston* applies to all insolvencies, including those of national banks, and that the " 'touchstone' " is to "achieve a 'balance of equities between creditors and creditor or between creditors and [the] debtor.' " Brief of Appellant Corbin at 23–24 (quoting *Vanston, supra*, 329 U.S. at 165, 67 S.Ct. at 241). They also claim that *Vanston* and progeny require the conclusion that "interest upon post-insolvency interest is *per se* unlawful if it results from insolvency-engendered delays and deprives other creditors." *Id.* at 2.

■ First, it is not at all clear that *Vanston* has any application to this case. That case was decided under the Bankruptcy Act, which explicitly exempts banks from its provisions. 11 U.S.C. § 22 (1976).[3] This exemption has important consequences. The assets of a debtor in reorganization or in liquidation, unlike those of a bank in

receivership, are in the custody of the court. *Id.* §§ 11, 516. The court, in reorganization proceedings like that in *Vanston*, has a duty to approve and confirm only those plans that are "fair and equitable." *Id.* §§ 574, 621(2). This fairness concept has a distinct statutory function in the context of reorganization in that it is related to the provision that a court may stay enforcement of a lien, *id.* § 513, and may materially and adversely affect a claimant's rights if two-thirds of the claimants in the same class agree, *id.* § 579. Speaking more generally, it is clear that special equity considerations are in play in a reorganization proceeding, where the goal is to restore a corporation to health by altering arrangements with its creditors and stockholders, but without neglecting the relative positions of these parties beforehand. *See generally 6 Collier on Bankruptcy ¶ 0.09* (1978). Because the powers and goals of a bank receiver are quite different, equitable principles developed in the reorganization context cannot simply be grafted onto the national banking statutes. *See In re Stirling Homex Corp.*, 579 F.2d 206, 211 n. 8 (2d Cir. 1978), *cert. denied*, 439 U.S. 1074, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979) (the National Bank Act is "an entirely different statutory scheme . . . under which distribution is to be 'ratable' rather than 'fair and equitable' "). In sum, while the landmark case of *Ticonic National Bank v. Sprague*, 303 U.S. 406, 58 S.Ct. 612, 82 L.Ed. 926 (1938) (establishing the rule that in a distribution of bank assets, a secured creditor can receive even post-insolvency interest up to the amount of the assets covered by his lien), is referred to in *Vanston*, 329 U.S. at 164, 165 n. 7, 67 S.Ct. at 240, 241 n. 7, it does not follow that the same rules that apply in bankruptcy necessarily apply in national bank receiverships.

■ In addition, the principles enunciated in *Vanston* do not, in our view, suggest any impropriety in the transaction at issue here. *Vanston* disallowed on equitable

---

**3.** The revised Bankruptcy Act also contains this exclusion, in 11 U.S.C. § 109(b)(2) (1979). Other references to the Bankruptcy Act in this opinion are to the old act.

grounds a claim for interest on unpaid interest, based on a pre-solvency contract, because the delay in interest payments was occasioned by a court order entered equally for the benefit and to the detriment of all creditors. Here, on the other hand, it was FRB's release of its lien and its agreement to forbear from collection of the debt for three years—an agreement entered into after insolvency so that the receivership estate would receive a $125 million premium (from a sale of the assets to European-American Bank) and the FDIC insurance fund would not be impaired—that resulted in the interest obligations in question. *Vanston* does not go to such a post-insolvency agreement, where there has been performance by the forbearing party and approval by the district court in accordance with the banking statute.

Under *Ticonic National Bank, supra,* the collateral held by FRB would not have become a part of the receivership estate until FRB's claim for principal and interest was fully satisfied. 303 U.S. at 412, 58 S.Ct. at 614. In light of this decision, it was not inequitable for the FDIC to accept a plan for the repayment of FRB's indebtedness that included payments of post-insolvency interest. FRB's lien, prior to its release, exceeded the amount of the principal and interest owed under the later agreement with the FDIC. Absent such an agreement, FRB could have taken possession of the $2.2 billion worth of assets securing its loans—preventing the purchase and assumption by European-American and the resulting premium benefiting FNB—or demanded under *Ticonic* post-insolvency interest if such a foreclosure were somehow delayed. A third possible outcome was a purchase and assumption financed by the FDIC itself and resulting in immediate payment to FRB. But this arrangement would concededly have required interest payments to FDIC during the course of liquidation. Based on

FRB's existing rights and the options available to the FDIC at the time, we cannot say that it was inequitable to require the FNB estate to make interest payments at the rate of 8.5% compounded annually for the three years of forbearance, but with some payments deferred for the three years (until the principal was fully repaid) and the rest deferred even longer—to this day.

Nor, leaving aside the equities in this particular case, does *Vanston* establish any *per se* rule against interest on interest. It does establish that in a bankruptcy or reorganization proceeding when the court enjoins payment of interest, creditors cannot demand a penalty for nonpayment despite the sufficiency of their collateral. But it certainly does not bar under all circumstances a post-insolvency agreement with a secured creditor, offering the benefits of deferral of repayment to the debtor, even if the agreement includes a provision for compound interest.[4] And none of the Second Circuit cases cited by the Trustee of FNYC extends *Vanston* to this kind of case. In *In re Realty Associates Securities Corp.,* 163 F.2d 387 (2d Cir.), *cert. denied,* 332 U.S. 836, 68 S.Ct. 218, 92 L.Ed. 409 (1947), the court simply enforced interest provisions of the bond indenture refusing to alter them by substituting a judgment return of interest or compound interest. In *Eddy v. Prudence Bonds Corp.,* 165 F.2d 157 (2d Cir. 1947), *cert. denied,* 333 U.S. 845, 68 S.Ct. 664, 92 L.Ed. 1128 (1948), the court held that even in a corporate reorganization, where the test is whether the plan is "fair and equitable," a secured and senior series of bonds was entitled to priority as to equal principal and interest until payment, even though that would exhaust the collateral available for a junior series of bondholders. The court followed *Ticonic National Bank, supra,* pointing out that the reorganization provisions of the Bankruptcy Act then in effect

---

4. We note that, in a reorganization proceeding, the debtor can obtain the benefits of deferral of repayment without resort to such an agreement through the operation of 11 U.S.C. § 513 (1976),

which authorizes the court to stay mortgage foreclosures or actions to enforce liens on the debtor's property.

did permit the plan to "deal with" the claims of secured creditors by giving them new interests in the corporate property instead of paying them in cash; but it did not affect their right to have the substituted interests computed upon the basis of the "value" of the interests—the liens—cancelled. Since the liens included interest to the date of payment, the substitute, to be lawful at all, had to include interest to the same date. Indeed . . the Supreme Court recognized as much in its discussion in *Vanston Bondholders Protective Committee v. Green.* ·

165 F.2d at 160 (footnotes omitted).

In *Empire Trust Co. v. Equitable Office Bldg. Corp.*, 167 F.2d 346 (2d Cir. 1948), the court merely held that indenture provisions for the payment of interest on interest were invalid under New York law. And *Ruskin v. Griffiths*, 269 F.2d 827 (2d Cir. 1959), cert. denied, 361 U.S. 947, 80 S.Ct. 402, 4 L.Ed.2d 381 (1960), enforced a contract providing for a post-default increase in interest, even assuming that this was the equivalent of interest on interest, *id.* at 830, because the estate was solvent. *In re Kingsboro Mortgage Corp.*, 514 F.2d 400 (2d Cir. 1975) (per curiam), was a Chapter XI proceeding· and therefore concerned only with unsecured creditors. 11 U.S.C. § 706(1) (1976). Finally, in *In re Continental Vending Machine Corp.*, 517 F.2d 997 (2d Cir. 1975), cert. denied, 424 U.S. 913, 96 S.Ct. 1111, 47 L.Ed.2d 317 (1976), determined that, in a reorganization proceeding involving a parent corporation and its subsidiary, it was "fair and equitable" to pool assets and liabilities for purposes of dealing with unsecured claims while not doing so for purposes of dealing with secured claims.

In *Vanston*, the court was concerned about the effect on the welfare of subordinate creditors of a court order staying payments of interest to a secured creditor. If that stay had resulted in the payment of interest on interest, then the court's order would have led to a continued deterioration in the position of subordinate creditors from the date of the stay until the date of payment to the secured creditor. Here, however, the delay in repayment of the secured creditor was agreed to in part to allow a purchase and assumption by European-American and in part to allow orderly liquidation of remaining assets. This arrangement did not result in a deterioration in the position of appellants as subordinate creditors from the date of insolvency onward. In sum, *Vanston*'s "rule" against interest on interest has no application in this context.[5]

Judgment affirmed.

5. We also agree with the district court's comments on the nature of these interest provisions:

The formula agreed upon to arrive at the "interest rate differential" or "recoupment provision" is not a provision for compound interest within the proper definition of the term. That the agreement used the words "compounded annually" to calculate the amount of a differential to be paid as interest is not determinative. Other features of the recoupment provision—the fact that the total amount due was to be fixed only after three years, that no further interest accumulated on the differential although the date of payment thereof was and remains today in the uncertain and distant future—remove it wholly from the ambit of agreements to compound interest on interest which have been disfavored by some courts.

475 F.Supp. at 1070–71. Although a compounding formula was used to calculate contin-·gent interest owed by FNB, this amount was essentially a single lump sum, dependent only on the rate of repayment of the principal over three years. This sum was limited from the beginning by the three-year period used. Depending on when one assumes that this contingent interest will ultimately be paid to FRB, one can calculate the effective interest actually charged. *See id.* at 1067–68.