**1208**

SECURITIES INVESTOR PROTECTION
CORPORATION, Plaintiff,

v.

AMBASSADOR CHURCH
FINANCE/DEVELOPMENT
GROUP, INC., Defendant,

SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,

v.

AMBASSADOR CHURCH FI-
NANCE/DEVELOPMENT GROUP,
INC. and Henry C. Atkeison, Jr., De-
fendants,

PINE STREET BAPTIST CHURCH, First
Church of the Nazarene, Randall Me-
morial Free Will Baptist Church, Fair-
winds Baptist Church, Southmoor Bap-
tist Church, Westwood Baptist Church,
West Gate Baptist Church, First
Church of God, First Missionary Bap-
tist Church, Christian Schools, Inc.
d/b/a Good Pasture Christian Schools,
and Theatre Nashville, Inc., Claimants-
Appellees,

v.

SECURITIES INVESTOR PROTECTION
CORPORATION, Defendant-Appellant,

Fred D. Bryan, Trustee-Appellee.

Nos. 85–5132, 85–5133.

United States Court of Appeals,
Sixth Circuit.

Argued March 11, 1986.

Decided April 23, 1986.

Theodore H. Focht, Washington, D.C.,
Stephen Harbeck (argued), for defendant-
appellant.

Julie N. Jones, L. Wearen Hughes (ar-
gued), Nashville, Tenn., for Fred D. Bryan.

Frank C. Ingraham, David S. Zinn, Brad-
ley A. MacLean (argued), Robert D. Tuke,
Farris, Warfield & Kanaday, Nashville,
Tenn., for West Gate Baptist Church.

Seymour Samuels, Jr., Nashville, Tenn.,
for Theatre Nashville, Inc.

Before: KENNEDY and RYAN, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

CORNELIA G. KENNEDY, Circuit Judge.

This case arises out of the liquidation of Ambassador Church Finance/Development Group, Inc. ("Ambassador") under the Securities Investor Protection Act of 1970 ("SIPA"), as amended, 15 U.S.C. §§ 78aaa–78lll.[1] The SIPA created defendant-appellant, Securities Investor Protection Corporation ("SIPC"), and established the "SIPC Fund" to provide for the orderly liquidation of failed securities brokerage firms and for the financial protection of their customers. Under the SIPA, the SIPC maintains the SIPC Fund by levying assessments on almost all brokerage firms. When necessary, the SIPC satisfies the claims of the "customers" of a bankrupt broker-dealer for cash or securities out of the SIPC Fund.[2]

Acting upon the application of the Securities and Exchange Commission ("SEC"), the United States District Court for the Middle District of Tennessee appointed trustee-appellee, Fred D. Bryan ("the trustee"), as temporary receiver of Ambassador on November 7, 1974. On December 17, 1974, the District Court found that Ambassador's customers needed the protections of the SIPA and appointed Bryan as trustee to supervise Ambassador's liquidation. In January 1975, the trustee sent a notice to Ambassador's customers, including plaintiffs-appellees, instructing the customers to file their claims with the trustee. Plaintiffs-appellees promptly filed their claims. In April 1975, the trustee asked the SIPC to determine whether plaintiffs-appellees and other similarly situated claimants qualified as "customers" under 15 U.S.C. § 78lll (2). On May 7, 1975, the District Court entered an order authorizing and directing the SIPC to advance, from time to time, to the trustee sufficient funds to permit the trustee to satisfy the claims that customers had filed against the estate. On June 2, 1975, the SIPC advanced funds to the trustee to satisfy the claim of another customer which the SIPC did not dispute.

In April 1976, after considerable delay, the SIPC determined that plaintiffs-appellees did not qualify as "customers" under the SIPA. Plaintiffs-appellees filed objections to the SIPC rejection of their claims and asserted entitlement to "customer" status. The SIPC, the trustee and plaintiffs-appellees proceeded to litigate the claim of Pine Street Baptist Church ("Pine Street") as a "test case" on the issue whether plaintiffs-appellees qualified as "customers." On January 9, 1981, the District Court entered an order declaring that Pine Street qualified as a "customer" under the SIPA and was entitled to the full amount of its claim. *In re Atkeison,* 446 F.Supp. 844 (M.D.Tenn.1977). SIPC and the trustee appealed. On May 27, 1982, this Court affirmed the District Court's decision. *Securities and Exchange Commission v. Ambassador Church Finance/Development Group, Inc.,* 679 F.2d 608 (6th Cir.1982). When the trustee and the SIPC could not agree whether plaintiffs-appellees were entitled to interest during the previous proceedings, an additional delay occurred before the SIPC paid plaintiffs-appellees' "customer" claims. Finally, in November 1982, the SIPC advanced funds to the trustee to satisfy some of plaintiffs-appellees' claims. In February 1983, the SIPC advanced more funds to pay the remaining claims.

Plaintiffs-appellees brought this action directly against the SIPC to recover inter-

---

1. In the Securities Investor Protection Act Amendments of 1978, Pub.L.No. 95–283, 92 Stat. 249, Congress extensively amended the SIPA. Since these amendments do not affect the issues in this case, we cite current law.

2. At the time of this liquidation, the SIPA provided that the SIPC shall advance funds from the SIPC Fund to the trustee to satisfy customers' claims up to $50,000. The SIPC, however, would only satisfy customers' outstanding cash balances to the extent of $20,000 per customer. Today, the SIPC Fund protects customers' cash balances to $100,000 and total cash and securities to $500,000. 15 U.S.C. § 78fff–3(a)(1).

est on their claims for the seven and one-half year period that the SIPC had delayed in paying their claims. The SIPC filed a motion to join trustee-appellee as a defendant. The District Court granted the motion. On November 5, 1984, the District Court, following a short trial, held that plaintiffs-appellees could recover interest directly from the SIPC. The District Court's order gave plaintiffs-appellees ten days to submit calculations showing the amount of interest due. On January 9, 1985, the District Court ordered the SIPC to pay the following amounts of interest directly to plaintiffs-appellees by January 31, 1985:

| | |
|---|---|
| Pine Street Baptist Church | $12,515.61 |
| First Church of the Nazarene | 11,375.80 |
| First Church of God | 10,201.40 |
| Theatre Nashville, Inc. | 10,201.40 |
| First Missionary Baptist Church | 18,891.50 |
| West Gate Baptist Church | 48,136.24 |
| Randall Memorial Free Will Baptist Church | 48,594.40 |
| Southmoor Baptist Church | 14,690.07 |
| Fairwinds Baptist Church | 14,335.35 |
| Westwood Baptist Church | 35,107.25 |
| Christian Schools, Inc. | 8,602.17 |

The District Court awarded six percent per annum interest compounded annually for the period from June 2, 1975, the date when the SIPC first advanced money to the trustee to pay a "customer" claim that the SIPC did not contest, to March 31, 1979. The District Court awarded ten percent annual interest compounded annually for the period from April 1, 1979 to the date of judgment. The SIPC objected to any compounding of interest.

The SIPC raises three issues on appeal: (1) Whether the District Court erred in awarding interest to plaintiffs-appellees for the seven and one-half year period that the SIPC withheld funds from plaintiffs-appellees while unsuccessfully challenging plaintiffs-appellees' claims as "customers" under the SIPA; (2) Whether the District Court could award "compound interest;" and (3) Whether the District Court should have subrogated the SIPC to the rights of plaintiffs-appellees to the extent of any interest

payments that the SIPC makes to plaintiffs-appellees.[3] For the reasons stated below, we hold that the District Court erred in awarding interest to plaintiffs-appellees. In light of this disposition, we do not consider the second and third issues.

■ Initially, we note that the District Court should have dismissed the action because plaintiffs-appellees, as customers, could not bring an action directly against the SIPC. In *Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975), the Supreme Court held that the SIPA does not give customers of failing broker-dealers an implied private cause of action to compel the SIPC to take action under the SIPA. In this case, plaintiffs-appellees brought suit against the SIPC. Consequently, the District Court should have dismissed the action because the SIPA does not give plaintiffs-appellees a cause of action against the SIPC.

In addition, the SIPC argues that since liquidation under the SIPA parallels a bankruptcy proceeding, the District Court could award interest against Ambassador's estate only if the estate's assets were sufficient to satisfy the principal amount of all valid claims against the estate. Essentially, a liquidation under the SIPA is a bankruptcy proceeding. Title 15 U.S.C. 78fff(b) provides:

> To the extent consistent with the provisions of this chapter, a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of Title 11. For the purposes of applying such title in carrying out this section, a reference in such title to the date of filing of the petition shall be deemed to be a reference to the filing date under this chapter.

Under bankruptcy law, with certain exceptions not applicable in this case, a court cannot award post-petition interest against

---

**3.** Trustee-appellee, Fred D. Bryan, argues on behalf of the estate's creditors that the District Court properly refused to subrogate SIPC to plaintiffs-appellees' rights to the extent of any interest payments that the SIPC makes to plaintiffs-appellees.

the debtor's estate unless a surplus exists.[4] In *Nicholas v. United States,* 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), the Supreme Court stated: "It is a well-settled principle of American bankruptcy law that in cases of ordinary bankruptcy, the accumulation of interest on claims against a bankrupt estate is suspended as of the date the petition in bankruptcy is filed." *Id.* at 682, 86 S.Ct. at 1678 (citation omitted). In *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 163, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946), the Supreme Court explained the reason for the rule:

> Exaction of interest, where the power of a debtor to pay even his contractual obligations is suspended by law, has been prohibited because it was considered in the nature of a penalty imposed because of delay in prompt payment—a delay ne-

cessitated by law if the courts are properly to preserve and protect the estate for the benefit of all interests involved.

Furthermore, the rule reflects "the broad equitable principle that creditors should not be disadvantaged *vis-a-vis* one another by legal delays attributable solely to the time-consuming procedures inherent in the administration of the bankruptcy laws." *Nicholas v. United States, supra* at 683, 86 S.Ct. at 1679 (footnote omitted). The SIPC reasons that since the debtor's estate is insolvent, the District Court could not award interest on plaintiffs-appellees' claims. We agree.

■ Furthermore, 15 U.S.C. § 78fff–3 provides the exclusive authority for the SIPC to advance funds to a trustee in a liquidation proceeding.[5] Although 15

---

**4.** Only three exceptions exist to the general rule against post-petition interest on claims against a bankrupt debtor. First, courts allow interest where the allegedly bankrupt debtor ultimately proves solvent. Second, courts allow interest to secured creditors when the secured property generates income. Third, courts have awarded interest on secured claims when the value of the security exceeds both the principal and interest due. *In re Caudle,* 13 B.R. 29, 33 (Bankr.W.D. Tenn.1981).

**5.** Title 15 U.S.C. § 78fff–3 provides:

(a) Advances for customers' claims.—In order to provide for prompt payment and satisfaction of net equity claims of customers of the debtor, SIPC shall advance to the trustee such moneys, not to exceed $500,000 for each customer, as may be required to pay or otherwise satisfy claims for the amount by which the net equity of each customer exceeds his ratable share of customer property, except that—

(1) if all or any portion of the net equity claim of a customer in excess of his ratable share of customer property is a claim for cash, as distinct from a claim for securities, the amount advanced to satisfy such claim for cash shall not exceed $100,000 for each such customer;

(2) a customer who holds accounts with the debtor in separate capacities shall be deemed to be a different customer in each capacity;

(3) if all or any portion of the net equity claim of a customer in excess of his ratable share of customer property is satisfied by the delivery of securities purchased by the trustee pursuant to section 78fff–2(d) of this title, the securities so purchased shall be valued as of the filing date for purposes of applying the dollar limitations of this subsection;

(4) no advance shall be made by SIPC to the trustee to pay or otherwise satisfy, directly or indirectly, any net equity claim of a customer who is a general partner, officer, or director of the debtor, a beneficial owner of five per centum or more of any class of equity security of the debtor (other than a nonconvertible stock having fixed preferential dividend and liquidation rights), a limited partner with a participation of five per centum or more in the net assets or net profits of the debtor, or a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of the debtor; and

(5) no advance shall be made by SIPC to the trustee to pay or otherwise satisfy any net equity claim of any customer who is a broker or dealer or bank, other than to the extent that it shall be established to the satisfaction of the trustee, from the books and records of the debtor or from the books and records of a broker or dealer or bank, or otherwise, that the net equity claim of such broker or dealer or bank against the debtor arose out of transactions for customers of such broker or dealer or bank (which customers are not themselves a broker or dealer or bank or a person described in paragraph (4)), in which event each such customer of such broker or dealer or bank shall be deemed a separate customer of the debtor.

To the extent moneys are advanced by SIPC to the trustee to pay or otherwise satisfy the claims of customers, in addition to all other rights it may have at law or in equity, SIPC shall be subrogated to the claims of such customers with the rights and priorities provided in this chapter, except that SIPC as subrogee may assert no

U.S.C. § 78fff–3(b) gives the SIPC authority to advance administrative expenses to the trustee and § 78fff–3(c) allows the SIPC to make certain discretionary advances, § 78fff–3(a) governs the SIPC's advances to the trustee to satisfy the "net equity claims of customers of the debtor." Title 15 U.S.C. § 78*lll* (11) defines "net equity" as:

> the dollar amount of the account or accounts of a customer, to be determined by—
>
> (A) calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase on the filing date, all securities positions of such customer (other than customer name securities reclaimed by such customer); minus
>
> (B) any indebtedness of such customer to the debtor on the filing date; plus
>
> (C) any payment by such customer of such indebtedness to the debtor which is made with the approval of the trustee and within such period as the trustee may determine (but in no event more than sixty days after the publication of notice under section 78fff–2(a) of this title).
>
> In determining net equity under this paragraph, accounts held by a customer in separate capacities shall be deemed to be accounts of separate customers.

Since the definition of "net equity" does not include interest, we hold that the SIPA does not authorize the SIPC to pay interest, either to the trustee or directly to the debtor's customers. As the District Court noted in its opinion, "Congress could have specifically provided for payment of interest out of the funds of SIPC, but did not do so."

The District Court, however, relied on *First Empire Bank-New York v. Federal Deposit Insurance Corporation,* 572 F.2d 1361 (9th Cir.), *cert. denied,* 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978), when ordering the SIPC to pay interest directly to plaintiffs-appellees. In *First Empire,* the Ninth Circuit allowed the appellants to recover the interest accruing on each letter of credit from the date the letter of credit matured, the dates on which the FDIC would have made a ratable distribution if the FDIC had treated all the claims against the debtor bank ratably. The court recognized that the purpose of the general rule disallowing interest accruing after insolvency is to further the concept of ratable distribution. The court, however, concluded that the general rule did not apply because the FDIC had failed to make the "ratable dividend" that 12 U.S.C. § 194 required.

> [A] difference must be recognized between the case where interest accruing after insolvency is added to become a part of the claim itself and the case where interest is awarded in addition to the amount of the claim for failure of the receiver to pay the claim when it became due or to include the claim in a distribution in which it was entitled ratably to share.

*Id.* at 1372. The Ninth Circuit observed that in *Ticonic National Bank v. Sprague,* 303 U.S. 406, 411, 58 S.Ct. 612, 614, 82 L.Ed. 926 (1938) (citation omitted), the Supreme Court stated:

> It is in order to assure equality among creditors as of the date of insolvency

---

claim against customer property until after the allocation thereof to customers as provided in section 78fff–2(c) of this title.

(b) Other advances.—SIPC shall advance to the trustee—

(1) such moneys as may be required to carry out section 78fff–2(e) of this title; and

(2) to the extent the general estate of the debtor is not sufficient to pay any and all costs and expenses of administration of the estate of the debtor and of the liquidation proceeding, the amount of such costs and expenses.

(c) Discretionary advances.—SIPC may advance to the trustee such moneys as may be required to—

(1) pay or guarantee indebtedness of the debtor to a bank, lender, or other person under section 78fff–1(b)(2) of this title;

(2) guarantee or secure any indemnity under section 78fff–2(f) of this title; and

(3) purchase securities under section 78fff–2(d) of this title.

that interest accruing thereafter is not considered. *But interest is proper where the ideal of equality is served, and so a creditor whose claim has been erroneously disallowed is entitled on its allowance to interest on his dividends from the time a ratable amount was paid other creditors.*

572 F.2d at 1372 (emphasis added by Ninth Circuit).

*First Empire,* however, does not apply to this case for two reasons. Initially, in *First Empire,* the FDIC, as receiver of the bankrupt bank, distributed virtually all of the debtor's assets to some creditors, while depriving other creditors their ratable share of the estate. In this case, the SIPC was not a trustee, receiver, or other fiduciary responsible for the liquidation of Ambassador's estate. Second, *First Empire* involved the National Bank Act, 12 U.S.C. § 194, which requires "ratable dividends." The SIPA, however, does not mention ratable dividends, distributions, or advances. Since the SIPA only protects customers' accounts to a maximum of $500,000 for total cash and securities but only $100,000 for cash, the SIPC often makes nonratable distributions from the SIPC Fund. Accordingly, we refuse to apply *First Empire* in the context of the SIPA in this case.

Finally, we note that 15 U.S.C. § 78kkk(c) provides that "[n]either SIPC nor any of its Directors, officers, or employees shall have any liability to any person for any action taken or omitted in good faith under or in connection with any matter contemplated by this chapter." Plaintiffs-appellees have not asserted any bad faith on the part of the SIPC in contesting their claims to "customer" status. Consequently, 15 U.S.C. § 78kkk(c) excuses the SIPC from any obligation to pay interest under the circumstances of this case.

Accordingly, the District Court order awarding interest to plaintiffs-appellees is reversed. The case is remanded to the District Court for entry of an order dismissing the action.