## In re NATIONAL COMPUTER COMMUNICATIONS CORP., a/k/a Printer's Warehouse, Inc., Debtor.

## In re DIGITAL ASSOCIATES CORP., Debtor.

**Bankruptcy Nos. 5–87–00231, 5–87–00232.**

United States Bankruptcy Court, D. Connecticut.

April 21, 1988.

Craig I. Lifland, Zeisler & Zeisler, P.C., Bridgeport, Conn., for debtor.

Thomas A. Gugliotti, Walter E. Paulekas, Schatz & Schatz, Ribicoff & Kotkin, Hartford, Conn., for Glenfed Financial Corp.

Eric Small, New Haven, Conn., for U.S. Trustee.

## MEMORANDUM OF DECISION AND ORDER ON MOTION FOR INTERIM FEES UNDER CODE § 506(b)

ALAN H.W. SHIFF, Bankruptcy Judge.

These companion cases present the novel question of whether interim compensation is allowable under Code § 506(b). For the reasons that follow, I conclude that it is not.

### I

On April 2, 1987, National Computer Communications Corporation and its affiliate, Digital Associates Corporation, (collectively "debtors") filed for protection under chapter 11 of the Bankruptcy Code. At the time of the filing, the debtors shared a common secured creditor, Glenfed Financial Corporation ("Glenfed"). On May 11, 1987, this court entered orders in both cases authorizing the debtors to incur additional secured debt from Glenfed. Paragraph I of those orders recited that as of the commencement of these cases "... the value of the collateral for said debt exceeded the amount of the debt." The orders also adopted the language of the underlying motions, which required in part that "[t]he Debtor reimburse GLENFED ... for reasonable attorney's fees allowed by the Court under § 506(b) of the Code." On July 20, 1987, Glenfed filed an application in each case, seeking an interim allowance of attorney's fees under .§ 506(b). The debtors do not object to the applications,

but reserve their rights under § 506(c).[1] Code § 506(b) provides:

> To the extent that an allowed secured claim is secured by property the value if which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

## II

In order to discern the reach of § 506(b), it is useful to review other Code sections that provide for the allowance of fees from a bankruptcy estate. As the Supreme Court recently observed in *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* —— U.S. ——, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988),

> Statutory construction, however, is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.

108 S.Ct. at 630 (citations omitted).

Under § 330(a) the court may award "reasonable compensation for actual, necessary services" rendered by the debtor's attorney, and under § 331, the court may allow, on an interim basis, compensation "as provided under section 330 ..." In marked contrast, there is no express provision for the interim payment of § 506(b) fees. The absence of such a correlative provision was undoubtedly intended.

The legislative history of § 331 underscores congressional intent that professionals who are entitled to awards under § 330 should not "be required to wait until the end of the case, which in some instances, may be for years." H.R.Rep. No. 595, 95th Cong., 1st Sess. 330 (1977), Sen.Rep. No. 989, 95th Cong., 2d Sess. 41–42 (1978), U.S. Code Cong. & Admin.News 1978, p. 5787. This parallels the objective in § 330 to attract talented lawyers to become bankruptcy specialists, who would otherwise be driven elsewhere. H.R.Rep. No. 595, 95th Cong., 1st Sess., 329–30 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. Such considerations are not present in § 506(b) because those attorneys are engaged by the secured creditor.

Apart from policy considerations, there is a substantive basis for rejecting Glenfed's application. Code § 506(b) establishes conditions precedent to the allowance of "reasonable fees" under which the claimant must prove that the fees are provided for in a security agreement, and that the value of the property securing the claim is greater than the amount of the claim, after any recovery under § 506(c). In addition, the amount of any such fees is limited to the extent of such excess value.

Code § 506(a) relates to the determination of secured status and provides *inter alia* that the value of a creditor's interest "... shall be determined in the light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."

In the context of this chapter 11 case, that time is keyed to the completion of the debtors' reorganization when the rights of all holders of claims and interests are determined. In that sense, Glenfed is no more entitled to an interim allowance of fees than it is to an interim allowance of interest.

In rejecting the argument that § 362(d)(1) provides an alternative basis for allowing the payment of postpetition interest, the Supreme Court recently noted in *Timbers, supra,* that § 506(b) was intended to codify pre-Code policy of not eroding a

---

1. § 506(c) provides:

   (c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

8

distribution to unsecured creditors. To achieve that result, the *Timbers* Court read § 506(b) to limit postpetition interest to only those creditors determined to be oversecured at the *completion* of the reorganization, i.e., the effective date of a confirmed plan.

Section 506(b)'s denial of postpetition interest to undersecured creditors merely codified pre-Code bankruptcy law, in which that denial was part of the conscious allocation of reorganization benefits and losses between undersecured and unsecured creditors. "To allow a secured creditor interest where his security was worth less than the value of his debt was thought to be inequitable to unsecured creditors." *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 164 [67 S.Ct. 237, 240, 91 L.Ed. 162] (1946). It was considered unfair to allow an undersecured creditor to recover interest from the estate's unencumbered assets before unsecured creditors had recovered any principal. See *id.*, at 164, 166 [67 S.Ct. at 240, 241]; *Ticonic Nat. Bank v. Sprague*, 303 U.S. 406, 412 [58 S.Ct. 612, 615, 82 L.Ed. 926] (1938). We think it unlikely that § 506(b) codified the pre-Code rule with the intent, not of achieving the principal purpose and function of that rule, but of providing oversecured creditors an alternative method of compensation. Moreover, it is incomprehensible why Congress would want to favor undersecured creditors with interest if they move for it under § 362(d)(1) at the inception of the reorganization process—thereby probably pushing the estate into liquidation—but not if they forbear and seek it only at the completion of the reorganization.

108 S.Ct. at 631.

Moreover, even if Glenfed is and will be oversecured, there is no basis for a finding that the extent of its security cushion is sufficient to absorb any applicable § 506(c) costs and expenses. Such a determination can only be made at the conclusion of the reorganization phase of this chapter 11 case.

During oral argument, Glenfed acknowledged that it would not be entitled to fees if, at the time of the completion of the reorganization, the value of its collateral is insufficient under a § 506(b) analysis. Glenfed contends, however, that such a scenario should not defeat its claim to an interim allowance and disbursement of fees, since in that event, the appropriate remedy would be disgorgement. I disagree. The remedy Glenfed suggests begs the question. It first must be found that Glenfed is entitled to an interim fee before disgorgement may be ordered.

III

Glenfed's application for an interim allowance and disbursement of § 506(b) fees is denied, and

IT IS SO ORDERED.